## SCOVILL MFG. CO. v. RADIO CORPORATION OF AMERICA.

District Court, S. D. New York.
Jan. 2, 1935.

Philipp, Sawyer, Rice & Kennedy, of New York City (Thomas G. Haight, of Jersey City, N. J., and M. C. Massie and H. M. Humason, both of New York City, of counsel), for plaintiff.

Stephen H. Philbin and Abel E. Blackmar, Jr., both of New York City, for defendant.

GODDARD, District Judge.

This suit is brought by the Scovill Manufacturing Company against the Radio Corporation of America for infringement of patent No. 1,258,423 granted on March 5, 1918, to Fritz Lowenstein on application filed August 10, 1916. The Scovill Manufactur-

ing .Company acquired title to the patent by assignment on November 15, 1924. The application of the patent in suit was a division from an original application No. 569,365 filed by Lowenstein on June 28, 1910.

The patent relates to variable condensers used in radio apparatus. The condenser is the instrument by which the user of a radio receiver selects the desired sending station. The condenser shown in the patent in suit and the condenser of the defendant are variable parallel plate condensers. In the variable condensers, referred to in the patent, the amount of capacity is varied from minimum to maximum by moving a part of the condenser—a rotary plate, between stationary plates, and the condensers have a logarithmic capacity variation.

The plaintiff alleges that claims 1 to 4, inclusive, 9, and 10 of its Lowenstein patent are infringed by the radio receiving sets "Radiola 16" and "Radiola 25" sold by the defendant.

The defendant alleges, in defense, that it has a license based upon the defendant's ownership of the parent Lowenstein patent No. 1,618,017; the patent in suit being a divisional patent. Defendant also urges the defenses of invalidity and noninfringement of plaintiff's patent.

The original application in the parent patent described and claimed both a circuit including a condenser and also a condenser. Later a divisional application was filed for the condenser, and upon this application the patent in suit was issued. The defendant purchased the original application and exclusive rights to use the circuit including the condenser. Subsequently the plaintiff purchased the condenser patent in suit. The condenser of the patent in suit and the condenser used in the system of the parent patent are logarithmic.

The defendant denies that its condenser or its circuits are logarithmic, but asserts that if they are, it has the right under the parent patent to use and sell them for the sole purpose of employing them in the combinations covered by the parent patent and that it did not sell nor manufacture the condensers alone.

Assuming, without deciding, that the plaintiff is correct in its contention that the defendant's receiving sets Radiola 16 and Radiola 25 include logarithmic condensers, if the defendant has a license giving it the right to use and sell the condenser as an element of the invention disclosed and covered by the parent patent application and is merely using the invention disclosed in and covered by such application, such license is a good defense to the suit at bar.

The defendant bases its defense of license upon the ground that its predecessor in title Dubilier bought the Lowenstein original application (now patent No. 1,618,017) from one Steward, who at that time was the owner of both the original application and the divisional patent in suit and who later sold the divisional patent to plaintiff's assignors; such patent describing and claiming one of the elements of certain of the combinations claimed in the original application at the time it was purchased by Dubilier and in the parent patent which issued to defendant on that application.

The Lowenstein original application No. 569,324 was filed June 28, 1910, and the divisional application was filed August 8, 1916. The divisional patent in suit No. 1,258,423 was issued March 5, 1918; the original application issued to defendant on February 15, 1927, as patent No. 1,618,017. The chain of title of these two Lowenstein patents is as follows:

On February 17, 1922, Lowenstein granted to one Steward the exclusive right and license throughout the United States, etc., to make, use, and sell the invention of the original application and the divisional patent subject to payment of royalty and the right to reassignment of the patents if not paid.

On May 27, 1922, Lowenstein died and an administrator of his estate was appointed on October 19, 1922.

On July 20, 1923, Steward assigned to William Dubilier his right, title, and interest of every nature in and to the exclusive right to make, use, and sell the inventions disclosed in and covered by the original application. Later, on the same day, Steward transferred to Lowenstein's administrator all his residuary right, title, and interest in and to the license agreement of February 17, 1922, which included his interest in the divisional patent.

On July 23, 1923, the administrator of Lowenstein's estate assigned to Dubilier his reversionary interest in the original application.

On October 17, 1923, Dubilier assigned all his right, title, and interest in and to the original application and the inventions thereof to the defendant.

The license and all other assignments were duly recorded in the Patent Office soon after the respective dates of execution.

On November 15, 1924, Lowenstein's administrator assigned his entire right, title, and interest to the divisional patent to Helen Lowenstein who, on the same day, assigned to the plaintiff.

It therefore appears that Steward, owning both the original application and the divisional patent, sold, on July 20, 1923, the original application to Dubilier, who, on October 17, 1923, assigned it to defendant, and that the plaintiff acquired, through various transfers, the divisional patent on November 15, 1924.

The divisional patent, p. 1, lines 23, 24, refers to the original application "of which the present application is a division," and the application for the divisional patent was filed August 10, 1916, as a division of the original application No. 569,324, filed June 28, 1910, which subsequently resulted in the defendant's patent. The original title of the divisional application was "variable electrical apparatus." Claims 1 to 8 refer to a variable condenser, and claims 9 to 10 to variable electrical apparatus. The parent application originally disclosed and claimed circuits containing the condenser and also the condenser itself.

Figures 1 and 2 of the divisional patent are identical with figures 9 and 10 of the parent patent, and figure 3 is a transfer section of figure 11 of the parent patent. Figure 1 of the divisional application is similar to figures 14A and 14B of the original application as filed. Figure 3 of the divisional application was similar to figure 13 of the original application as filed. The specification of the divisional application as well as the drawings is based upon portions of the original application.

Although different letters are used in the formulæ, the mathematical statements and the substance of the formulæ of the two patents are similar. Typical claims of the defendant's patent are claims 16 and 31. If claim 16 be compared with claim 4 of the divisional patent, their similarity is clear, and the similarity of the other claims relied upon by plaintiff is apparent when compared with typical claims of the parent patent. Claims 13, 16, 31, and 35 of the parent patent are for combinations for which the electric value of the variable tuning element follows a logarithmic law. Claims in issue of the plaintiff's patent are for a variable electrical element, the condenser; the electrical value of the condenser varying logarithmically.

When Steward, possessing both the right to make the circuit embodying the patented condenser and also the right to make the condenser, transferred the right to make the circuit embodying the condenser, he must, it seems to me, be deemed to have included in his grant the right to make the condenser in so far as necessary for such transferee to receive the full enjoyment of the right expressly transferred. Without the condenser the circuit is incomplete and the transferee would be deprived of what he had contracted for.

What Dubilier, the defendant's predecessor, purchased was Steward's complete right to make the combination of the application. This right could not be exercised without making also the apparatus covered by the patent in suit. Steward possessed the right to do this and transferred that right so far as it was necessary or incidental to the principal right to make the entire combination. It is certainly reasonable to say that the transfer of a right to make a whole combination must carry with it the right to make all its elements for that particular purpose in so far as the transferor is in a position to transfer.

"It is a maxim of the common law that one, granting a thing, impliedly grants that without which the thing expressly granted would be useless to the grantee. This maximum is as applicable to grants of patent rights as to other species of property." Victory Bottle Capping Mach. Co. v. O. & J. Mach. Co., 280 F. 753, 758 (C. C. A. 1). See, also, United Printing Machinery Co. v. Cross Paper Feeder Co. (D. C.) 220 F. 322.

It is also to be noted that the assignments to Dubilier and to defendant were on record in the Patent Office and had been for upwards of a year when plaintiff purchased its patent.

In my opinion the defendant has the right to use the condenser of the patent in suit as an element of the combination in the invention disclosed in the parent patent application, but only in such combination; and no right to make, use, or sell such condenser as a separate entity. In other words, the plaintiff has the right to make and sell the condenser without limitation as to its use and the defendant has the right to make and sell the condenser in the combination of the parent patent only. At the time of trial, counsel for plaintiff contended to the contrary, but after final argument have practically conceded this to be so. (The trial occurred in December, 1930, but because of other pending litigation and conditions which might affect this case, it was not submitted

for decision until a few weeks ago.) However, plaintiff does contend that in producing Radiola 25 and Radiola 16 the defendant is not practicing the invention of the parent patent; that the invention described in the application was an apparatus using both logarithmic condensers and logarithmic inductances in a particular way and not an apparatus using only logarithmic condensers; that the parent patent disclosed a receiver in which a variable condenser is coupled to a variable inductance; and that neither Radiola 25 nor Radiola 16 is such a receiver because neither has a variable inductance; and further that the claims of parent patent, if properly construed, do not read on these Radiolas.

The apparatus disclosed in the application (original) comprised a transmitter, a receiver, and other parts including logarithmic condensers and logarithmic inductances. The specific method shown of using the condensers and inductances was to couple them together so as to co-operate. This was one of the inventions disclosed in the application, but not the only one, for the invention of the patent in suit for a logarithmic condenser without any inductance was also disclosed in the application, and there were also, according to the Patent Office, the separate inventions of a circuit containing a logarithmic element or condenser (claim 16 of the parent patent) and of gang condensers (claim 31 and 37).

■ It seems to me that if the circuits in defendant's Radiolas 16 and 25 have logarithmic condensers, as the plaintiff contends and as may be assumed for present purposes, that claim 16 of the parent patent reads upon these Radiolas. Claim 16 is as follows: "Wireless apparatus comprising the combination, in an oscillatory system, of a variable tuning element, and means movable to adjust said tuning element * * * *." Each of the Radiolas is a "wireless apparatus comprising the combination, in an oscillatory system"—that is, a circuit containing a substantial amount of inductance and capacity "of a variable tuning element, and means movable to adjust said tuning element." This is a condenser and the means for varying it. Plaintiff, however, contends that claim 16 should be so construed as to include another variable tuning element, or else the feature of "stiffness"; but it seems to me that to thus construe it would be to read into it another tuning element which is not there, namely, variable inductance as well as variable capacity.

Lowenstein disclosed variable condensers and variable inductances and might properly obtain claims as he did for them in combination and also individually. Claim 16 is a sub-combination claim and the subject-matter of it was disclosed in the Lowenstein parent application when filed. He was entitled to this claim unless the subject-matter of it appeared in the prior art, and the plaintiff, of course, has not shown the prior art covering it. Plaintiff refers to the following portion of a statement of November 9, 1915, by the Patent Office Examiner during the prosecution of the parent application: "Claim 25 (now claim 16 of patent 1,618,017) reads upon the modification in which a coupled inductance and capacity element is shown, while claims 15 and 16 are limited to a capacity and an inductance, respectively." And urges that this statement indicates that the Examiner not only considered that claim 25 reads upon the showing of a coupled inductance and capacity, but was for a coupled inductance and capacity. But after reading the full action it seems clear that claim 16 refers to only one tuning element as contrasted with claims 17, 18, etc., and that the Patent Office was distinguishing between circuits containing condensers and inductances, which were shown as coupled, and a condenser or an inductance per se.

The feature of changing tuning "without altering the ratio of stiffness" is an element of claims 17 and 18, but is not included in claim 16. Furthermore, the receiver of figure 3 of the Lowenstein patent, No. 1,618,017 contains no provision for varying stiffness without losing tuning.

■ Plaintiff also urges that claim 16 is invalid for want of invention and for double patenting; but there is no double patenting because the claims of the plaintiff's patent are for condensers per se (claims 1 to 4) or variable electrical apparatus (claims 9 and 10), while claims of defendant's patent are for circuits. This distinction was recognized and approved by the Patent Office, for it permitted what was now claim 16 of the parent patent to remain in the application, while requiring that the claim for the condenser per se be divided out as constituting "a separate and distinct subject of invention." Since the claims covered different subject-matter, there is no double patenting. Driver-Harris Co. v. Hardite Metals (D. C.) 28 F.(2d) 413; Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co., 22 F.(2d) 259 (C. C. A. 2). Claim 16 was in the parent application at the time Steward sold it so that both he

and the plaintiff, as his successor in interest, are estopped to question its validity. Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 266 U. S. 342, 45 S. Ct. 117, 69 L. Ed. 316; Foltz Smokeless Furnace Co. et al. v. Eureka Smokeless Furnace Co. (C. C. A.) 256 F. 847.

Claim 31 of the parent patent seems to clearly apply to Radiola 16 and 25 assuming, as contended by plaintiff, that they have logarithmic condensers. It reads: "31. High frequency signalling systems comprising in combination, two associated oscillatory circuits, a variable tuning capacity in each circuit and common means movable to vary the electrical values of said capacities while maintaining substantial syntony, the variation of said capacity produced by a movement of said means" being logarithmic.

Both Radiola 16 and Radiola 25 are "high frequency signalling systems comprising in combination two associated oscillatory circuits." These are found in the Radiolas, an oscillatory circuit being a tuned circuit, which is any circuit including capacity (condenser) and inductance.

"A variable tuning capacity in each circuit." This may be either the capacity of the circuit or the capacity of a condenser in the circuit.

"And common means movable to vary the electrical values of said capacities." In Radiola 25 such means includes a drum which may be moved to vary simultaneously the loop and the oscillatory condensers. Radiola 16 has a knob on the panel, by which the three condensers are simultaneously varied.

"While maintaining substantial syntony." "Syntony" means in tuned relation so that the time periods of several tuned circuits are in a definite relation to each other. In Radiola 16 the condensers are so related that each circuit is tuned to substantially the same frequency. In Radiola 25 the oscillatory condenser circuit is always tuned to a frequency of 40kc from whatever frequency the loop condenser circuit is tuned to, so that the same relative tuning is maintained constant.

Plaintiff takes the position that it is not affected by claim 31 since it was added after Steward sold the parent application; also, that it is of no effect because it is based on new matter with no supplemental oath.

While it is true that the words appearing in the parent patent at the top of page 7 relating to gang condensers (one control of several condensers) were added after filing the original application, they were added by amendment dated September 20, 1915, and were therefore a part of the application sold by Steward in 1923 and a part of the application when the condenser feature in 1916 was divided out. Moreover, gang condensers were disclosed in the application filed in 1910, as is indicated by several of the original claims relating to means for simultaneously adjusting capacities, and also the inductances. Further substantiating evidence of the right to this amendment is the fact that it was allowed by the Patent Office, and this rule then, as now, provided that: "Matter not found in either (original application, etc.) involving a departure from the original invention, cannot be added to the application even although supported by a supplemental oath, and can be shown or claimed only in a separate application." Patent Office Rule 70.

The presumption is that the Patent Office did not violate its own rule and that the patent was duly issued. Bickell v. Smith-Hamburg-Scott Welding Co., 53 F.(2d) 356 (C. C. A. 2).

Claim 31 is not defective for lack of a supplemental oath as it is fairly derivable from a former sworn disclosure. See Westinghouse Electric & Mfg. Co. v. Metropolitan Electric Mfg. Co., 290 F. 661 (C. C. A. 2); Hartford-Empire Co. v. Obear-Nester Glass Co., 71 F.(2d) 539 (C. C. A. 8).

If the defendant is using logarithmic condensers in its Radiola 16 and Radiola 25, as the plaintiff contends, in my opinion the defendant is using them as an element of the invention disclosed in and covered by the parent application, and it has a license which gives it this right.

Accordingly the bill is dismissed.