## GOSS et al. v. HENRY McCLEARY TIMBER CO.

### No. 7712.

Circuit Court of Appeals, Ninth Circuit.

March 2, 1936.

---

Richard J. Cook, of Seattle, Wash., for appellants.

W. H. Abel, of Montesano, Wash., and T. H. McKay, of Aberdeen, Wash., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

The appellants in the case at bar allege that the appellee has infringed their patent No. 1,541,350 issued June 9, 1925, and patent No. 1,663,982 issued March 27, 1928, and claims injunctive relief and an accounting therefor. Of such an action the federal court clearly has jurisdiction, as it arises under the patent laws of the United States. In addition, however, to such allegation, the plaintiffs allege a verbal contract between appellants and appellee for the supervision of the construction of certain dry kilns for the use of the patented method. The appellee, in its answer, admits the making of such an oral contract, admits that under said contract it has constructed kilns for the use of appellants' method, claims that it was authorized so to do by the verbal contract between the parties, admits the validity of the patents, and asserts a willingness to pay the contract price to the appellants when appellant Goss renders the services which he agreed to render in supervising the installation of the appliances in the kilns. The terms of the agreement as set out in the bill and answer thereto are not identical. The trial court in its findings of fact No. II stated the agreement to be as follows:

"In 1924 defendant corporation was operating sixteen dry kilns in connection with its door plant at McCleary, Washington. These dry kilns were old and of wooden construction, and defendant was contemplating their replacement with new kilns of concrete construction. Plaintiff Goss, who claimed to be a dry kiln engineer, approached defendant with a view to employment in such reconstruction and revision. Defendant wished to extend the life of the old kilns before going to the expense of replacing them with new kilns, and an agreement was entered into whereby Goss was to revise one old kiln at a price of $500 and if the revision of this one old kiln should prove satisfactory to defendant was to revise the remaining fifteen kilns for an additional sum of $2,-000. Nothing was said about Goss having a patent or having applied for a patent on any system or method of dry kilning lumber or of dry kiln construction. The one old kiln was revised and tested by Goss to defendant's satisfaction and defendant paid him $500 therefor. No other kilns were at any time revised by Goss."

It made the following finding, No. III, as to the use of appellant's method: "June 9, 1925, a patent No. 1,541,350, was issued to plaintiffs covering their claimed improvement in the method and means of kiln drying lumber. The improvement in the method and means of drying lumber covered by their patent No. 1,541,350, and which was practiced by Goss in revising the old wooden kiln and used by defendant in its nineteen new kilns consists in piling lumber in a kiln in piles suitably supported, said piles consisting of layers with spaces between the layers, with a space between the piles so as to form a blind flue, the flue not extending all of the way to the top of the stack but being closed at the top by units of lumber lying across the flue, the air in the chamber or flue being heated by means located at the bottom thereof and with jets of steam injected upwardly into the bottom of the blind flue. By this method the hot air is forced through between the layers of lumber."

In the conclusions of law it was held that the appellants were not entitled to injunctive relief because of laches, nevertheless the decree grants an injunction prohibiting the use of appellants' invention in three kilns. The court also held that the appellee had made an implied election under the order of court requiring it so to do which fixed $2,000 as full compensation to the appellants for the past and future use of appellants' invention in its fifteen rebuilt kilns.

The court also concluded as a matter of law that the appellants were entitled to recover compensation for the value of the past and future use of the inventions in the three remaining kilns and for injunctive relief in case of failure on the part of the defendant to satisfy the judgment. The decrees gave judgment to the appellants for the sum of $2,000 "in full payment for the past, present and future right to operate and maintain sixteen dry kilns,

using therein the patented methods." With respect to the three remaining kilns, the matter was referred to a master for finding and report as to the value of the use of invention in the three remaining kilns "and the profits, gains, savings and advantages which the defendant has derived, received or made, since January 24th, 1930, by reason of its infringement of said patents." The court "retained jurisdiction to determine the future and contingent right of plaintiffs to injunction in case of a failure on the part of defendant to fully satisfy this decree."

One difficulty arises in this case by reason of the jurisdictional question which requires a separation of the rights of the parties under the license agreement from the rights arising from the infringement of the patent.

The appellee, although it took no appeal, by a motion to dismiss the appeal raises the question of the jurisdiction of the federal court to consider questions growing out of the proper interpretation of the license agreement and the ascertainment of its terms upon the ground that such a question is not one arising under the patent laws of the United States as to which the federal courts have jurisdiction. The question of the jurisdiction of the federal courts to pass upon a patent infringement claim when the parties have entered into a contract involving the use of the invention has been before the Supreme Court on divers occasions. In Hartell v. Tilghman, 99 U.S. 547, 556, 25 L.Ed. 357, where an agreement between a patentee and a third person for the use of his invention was involved, the Supreme Court said:

"Where the contract being in parol the parties differ about one or two of its minor terms,—we do not agree that either party can of his own volition declare the contract rescinded, and proceed precisely as if nothing had been done under it. If it is to be rescinded, it can be done only by a mutual agreement, or by the decree of a court of justice. If either party disregards it, it can be specifically enforced against him, or damages can be recovered for its violation. But until so rescinded or set aside, it is a subsisting agreement, which, whatever it is, or may be shown to be, must govern the rights of these parties in the use of complainant's process, and must be the foundation of any relief given by a court of equity.

"Such a case is not cognizable in a court of the United States by reason of its subject-matter, and as the parties could not sustain such a suit in the Circuit Court by reason of citizenship this bill should have been dismissed."

That decision, however, has been modified by later decisions of the Supreme Court in so far as it held that once a contract is entered into between the parties they must thereafter rely entirely upon a suit under the contract for any relief in respect to the patent. These later cases hold that if the owner of the patent wishes to base his action on the theory of infringement he may do so and thus take the risk that defendant may prevent recovery by showing a license to do the act he has done. Such a defense would defeat the action, but would not oust the court of jurisdiction. Nor would the fact that the plaintiff as in the case at bar, sets out the license contract and seeks to avoid its application in anticipation of the defense of license, defeat the jurisdiction of the court.

In The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 33 S.Ct. 410, 411, 57 L. Ed. 716, the Supreme Court had under consideration an appeal from a decree of a circuit court solely upon the question of jurisdiction. The plaintiff in its bill had confined its claim of infringements of its patents to the alleged sales of its patented devices in violation of a price restriction attempted to be imposed upon second purchasers. In holding that it had jurisdiction of the case, the Supreme Court said:

"The party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' the patent or other law of the United States by his declaration or bill. That question cannot depend upon the answer, and accordingly jurisdiction cannot be conferred by the defense, even when anticipated and replied to in the bill. * * * Conversely, when the plaintiff bases his cause of action upon an act of Congress, jurisdiction cannot be defeated by a plea denying the merits of the claim."

In a later decision (Healy v. Sea Gull Specialty Co., 237 U.S. 479, 35 S.Ct. 658, 659, 59 L.Ed. 1056) the Supreme Court considered the question of jurisdiction in an action for infringement of a patent. The bill contained allegations of infringement

and, anticipating a defense, the plaintiff set out a license to defendant, a breach of its conditions and a termination of the same. It also stated that the license agreement contained a stipulation that in case of an infringement suit recovery should be for the same amount as the royalty agreed upon. The jurisdiction of the federal court depended upon whether the case was one arising under the patent laws. The action was dismissed by the District Court which held that the case was one arising under the contract and not under the patent law. The Supreme Court stated that: "The plaintiff is absolute master of what jurisdiction he will appeal to; and if he goes to the district court for infringement of a patent, unless the claim is frivolous, or a pretense, the district court will have jurisdiction on that ground, even though the course of the subsequent pleadings reveals other more serious disputes. * * * It does not matter whether the validity of the patent is admitted or denied."

In Luckett v. Delpark, Inc., 270 U.S. 496, 46 S.Ct. 397, 401, 70 L.Ed. 703, the averments of the bill showed that the main purpose of the suit was to enforce the rights of the plaintiff under his contracts with defendants for royalties and for pushing the sales of "My Pal" patented garments. It was not a suit seeking relief for an infringement of the patent. The court held that the case did not arise under the patent laws. After reviewing the principal cases on the subject, Chief Justice Taft speaking for the court said:

"The result of these cases is that a federal district court is held to have jurisdiction of a suit by a patentee for an injunction against infringement and for profits and damages, even though in anticipation of a defense of a license or authority to use the patent, the complainant includes in his bill averments intended to defeat such a defense. If these averments do not defeat such defense, the patentee will lose his case on the merits, but the court's jurisdiction under the patent laws is not ousted. The error in Hartell v. Tilghman, supra, was in denying jurisdiction under the patent laws when the patentee based his action broadly on his patent and averment of infringement seeking injunction and damages. His averments, intended to constitute a reply to the anticipated defense that the defendant was a licensee, did not change the nature of his declared choice of a suit under the patent laws. This, under the principle now established by the later cases, and especially The Fair v. Kohler Die & Specialty Co., and Healy v. Sea Gull Specialty Co., is clear."

 It follows that the court clearly had jurisdiction of the action by reason of the allegations of the complaint charging infringement. The anticipatory allegation of the complaint with regard to the contract did not deprive the court of jurisdiction. The question with reference to the sixteen new kilns is this: Did the contract between the parties license the appellee to use the patented method in the kilns constructed by it? If it did, there was as to these kilns no infringement and the court, if it found such a license, should not have awarded the contract price therefor as a part of the decree because the court had no jurisdiction to enforce rights of the parties under the license agreement. The fact that the court also found there was an infringement as to the remaining three kilns did not authorize it to consider the contract rights of the parties as ancillary thereto. It had to determine the question of infringement and damages and profits arising from the use of the patented method in the three extra kilns, and in the others as well, if not licensed, but it did not have jurisdiction to consider the rights of the parties growing out of the contract if there is no infringement.

In Geneva Furniture Mfg. Co. v. Karpen & Bros., 238 U.S. 254, 35 S.Ct. 788, 59 L.Ed. 1295, there was an appeal from a decree of the District Court dismissing a suit based in part upon the patent laws, for want of jurisdiction. The bill showed that it was "intended to charge the defendants (a) with contributing to the infringement of letters patent belonging to the plaintiff by wrongfully inducing and persuading designated licensees of the plaintiff to make, use, and sell devices embodying the inventions of the patents in circumstances not authorized or permitted by their licenses; (b) with wrongfully procuring such licensees to violate their license contracts in designated particulars, some of which have no bearing on the charge of infringement; and (c) with refusing to perform stipulations whereby the defendants agreed to assign to the plaintiff certain other letters patent." The prayer was for an injunction and accounting in respect to the contributory infringement, for an injunction and damages in respect to the procured breach of the li-

censees' contractual obligations, and for the specific performance of the stipulations to assign the other letters patent. It was held that "so much of the bill as charges the defendants with contributory infringement of the plaintiff's letters patent, and seeks relief on that ground, presents a case arising under the patent laws. * * * But the other portions of the bill * * * those not founded upon an unauthorized making, using, or selling of devices embodying the inventions of the plaintiff's patents, but resting only upon a breach of contractual obligations—do not arise under the patent laws. * * * The rule otherwise prevailing respecting the joinder of causes of action in suits in equity must, of course, yield to the jurisdictional statute." It follows that the question of right of the appellants to compensation under the license agreement, implied from the agreement to supervise the construction of appellee's kiln, is not a question arising under the patent laws of the United States. Inasmuch as the evidence is set out in the statement of the case, we would have jurisdiction in an equity case to determine therefrom what were the terms of the contract and whether or not it authorized the use of the appellants' method in the sixteen new kilns. The witnesses, however, appeared before the trial judge and their testimony is not entirely without contradiction. It is clear from the allegations of the pleadings and from the testimony that the services to be rendered by the appellants in supervising the construction of appellee's new kilns were the basis for the payment of the contract price of $2,000; the appellee not being aware of the fact that the method was patented and therefore not having negotiated for or expressly required a license. The method covered by the patent had largely to do with the piling of the lumber in the kiln and handling it therein. The instrumentalities used in the actual drying of the lumber were well known and are not claimed to have been invented by the appellants. It is clear that the appellants, in making the contract for the rebuilding of the appellee's kilns necessarily intended that the patented method should be used therein. If in the opinion of the trial judge the contract was in legal effect a license to use such method, as it seems to be, it is difficult to see how the failure to employ the appellants to supervise the installation of the necessary appliances in the new dry kilns could be such a variance from the license contract as would constitute an infringement in view of the fact that no patent had been issued at the time the contract was made and the appellee had no knowledge that the contract had relation to a patented method. Under the circumstances, we think it is reasonably clear that the mere failure of the appellee to avail itself of the services of the appellants to supervise the installation of the necessary instrumentalities in the new dry kilns was not so great a departure from the terms of the agreement as would constitute an infringement by the use of the patented method in the new kilns. We do not decide that question, however, because the terms of the agreement are not determined either by the trial court or by us. Another question in relation to the contract is whether or not it contemplated the use of the patented method in the new kilns which replaced the old, that is to say, did the contract contemplate that the method should be used in the old kilns only and did the right to use the method terminate when these old kilns were destroyed or replaced, or did it continue during the use of the new kilns. If it did not so continue, the use of the method in each of the new kilns would constitute an infringement over which the trial court had jurisdiction.

We conclude in view of these uncertainties that the case should be remanded to the trial judge for a specific finding upon the question as to whether or not the oral contract authorized the use of the patented method in all the kilns used by the appellee other than the three kilns not covered by the agreement. If so as to such kilns, the trial judge is directed to refrain from entering a judgment in favor of the appellants for the contract price or otherwise, but without prejudice to the maintenance of a proceeding at law or in equity based upon the contract; if not, then for appropriate action on the question of infringement. With reference to the remaining kilns, the trial court will retain jurisdiction, but in order that that court may be unhampered by the present interlocutory decree which refers the question of damages to a master, we reverse the decree in toto in order that that court may, if it sees fit, dispose of the question some other way. It occurs to us that on reconsideration the court might feel that the contract price for the installation of appellants' system as to the other kilns might be applied to

the three kilns in question unless there is a clear indication from the parties, or one of them, that such a decision would be inequitable.

Interlocutory decree reversed.