### BETTIS v. PATTERSON–BALLAGH CORPORATION, Limited.

No. 945–Y.

District Court, S. D. California, Central Division.

Sept. 22, 1936.

son and J. C. Ballagh to manufacture and sell. Their interest was assigned to the corporation defendant. The well-casing protectors consist of heavy rubber rings of an interior diameter smaller than the drill pipe on which they are to be placed and used. They are of such size and thickness as to require mechanical means to expand them for the purpose of placing them on the drill pipes. The plaintiff devised such an applicator or expander for elastic rings, and was using and making it at the time he licensed the predecessors of the defendant to manufacture and sell the rings. Plaintiff and Ballagh filed an application for the patent and made a joint assignment thereof to the defendant corporation. They did this for the purpose of interference proceedings with a man who was employed to manufacture the applicators. In the conduct of the interference proceedings it was discovered that certain of the claims which have been inserted in the patent application by amendment were the sole invention of the plaintiff Bettis covering the original device, devised by him prior to April 12, 1926. Certain other claims were found to be the joint claims of the plaintiff and Ballagh and to have priority over the other applicants and appeared to be allowable.

After the ruling of the Patent Office in the interference proceeding, the defendant changed the joint application to the Patent Office into a sole application and procured the patent to be issued on July 10, 1934, on the sole claims of the plaintiff, to the defendant as assignee.

Ever since 1925, the plaintiff has been engaged in licensing various persons to manufacture, sell, and use Bettis protectors, and in conjunction therewith furnished to the purchasers applicators. Up to November 29, 1933, the defendant was one of the plaintiff's licensees for the manufacturing, sale, and use of the protectors.

Since the forfeiture of defendant's license agreement, plaintiff has licensed other persons to manufacture, sell, and distribute his patented well-casing protectors and (as licensee) has caused to be manufactured and used applicators therefor. The licensees have built up an extensive business in the manufacturing and distributing of well-casing protectors for which they paid royalties to plaintiff. Plaintiff from the beginning of his invention of the protectors and applicators therefor has

John J. Wilson and Charles C. Montgomery, both of Los Angeles, Cal., for plaintiff.

Lyon & Lyon, Frederick S. Lyon, and R. E. Caughey, all of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

The plaintiff is the owner of a patent on a well-casing protector and also of a patent on an improved well-casing protector which he licensed to C. L. Patter-

educated the trade in the use and mounting of his protectors on the drill pipes used in oil well drilling by means of the applicator as devised by him. He has made available to his licensees and to the purchasers of his protectors applicators for applying the same to the drill pipes without any charge or compensation, except the royalties under the license agreement for the manufacture of the protectors. The applicators which the plaintiff has caused to be manufactured and used are covered by the broad claims of the patent which defendant holds. Plaintiff's ability to continue collecting royalties is dependent upon his right to use the applicator for placing protectors on the drill pipes. He claims the right to use the applicator by reason of the invalidity of the patent upon the ground of prior use.

The defendant *has not* brought suit against the plaintiff for contributory infringement; *nor has it sued any of the plaintiff's licensees or their customers for using the protectors.* However, subsequent to the issuance of the patent, the defendant requested licensees of plaintiff and customers and users to desist from using the method or apparatus of the applicator patent without the consent or license of the defendant.

Licensees and their customers and the users of protectors have been informed that the refusal to desist from such use would necessitate legal action to enforce the patent rights of the defendant under the patent. The defendant has represented to the trade and to a large number of the plaintiff's customers and users of protectors, and the licensees of plaintiff under his protector patents and users of the applicators thereof, that the use of such applicators by such customers, users, and licensees constitutes infringement of United States letters patent No. 1,965,876, and has made threats of infringement litigation against plaintiff's licensees and many of their customers and users in the event that they should continue to apply the protectors to drill pipes by means of applicators, unless they purchase the protectors from the defendant. Because of these activities, the trade has been greatly disturbed and many customers have ceased using protectors, and plaintiff's licensees have been prevented from selling them. Plaintiff's trade and business have been greatly reduced and he has been damaged in a sum in excess of $25,000.

The amended and supplemental bill of complaint in declaratory relief (to be referred to, for brevity, as the "bill of complaint"), after setting forth the foregoing facts, alleges the existence of a controversy between the plaintiff and the defendants. It then attacks the validity of the letters patent by reason of the fact that the plaintiff, as the inventor of the subject-matter of the claims, had abandoned it prior to the filing of the application and dedicated it to the public, an abandonment followed by actual public use for more than two years prior to the application. The proceedings before the Commissioner of Patents are also attacked upon the ground of excess of authority, and for permitting the defendant to change the application.

Upon the basis of the facts just summarized, the plaintiff seeks a declaration that the patent in issue is invalid. He also seeks to enjoin the defendant from representing to the trade and to the plaintiff's licensees and purchasers and users of protectors that the use of the applicator and elastic rings by them constitutes infringement, and that they must purchase their protectors from defendant, and to protect them against any misrepresentations or threats by reason of such use. He also asks for an accounting and damages in the sum of $25,000.

The defendant has moved to dismiss the bill upon the ground that it does not state facts constituting an actual controversy within the provisions of the Declaratory Judgments Act (28 U.S.C.A. § 400), or any cause of action over which the court has jurisdiction. The motion also alleges uncertainty and ambiguity in the portions of the complaint dealing with the acts of the plaintiff relating to the manufacture of the applicator and pleads estoppel and lack of jurisdiction of the court to entertain an action of this character. The defendant has also moved to strike from the amended and supplemental bill of complaint the allegations relating to the invalidity of the patents upon the ground of estoppel. A motion for a further and better statement of plaintiff's cause of action and for further and better particulars under Equity Rule 20 (28 U.S.C.A. following section 723) has also been interposed. The items as to which greater certainty is requested relate to the dedication of the invention to the public and the rela-

458

tion between the plaintiff and his licensees as to the applicators.

The solution of the problem presented by these motions depends upon the answer to the question: "How does the claim of the plaintiff arise?" As the most important factual basis behind this question is the assignment, it is important that it be set forth in full. It reads:

"Assignment

"Whereas, We, William I. Bettis and James C. Ballagh, both of Los Angeles, County of Los Angeles, State of California, have jointly invented an Applicator for Elastic Rings, etc., for which we have jointly applied for Letters Patent of the United States as evidenced by an application executed by us October 20th, 1928, preparatory to filing the same in the United States Patent Office, and

"Whereas, Patterson-Ballagh Corporation, a California corporation, having a place of business at said Los Angeles, California, is desirous of purchasing and acquiring all our right, title and interest in and to the same and in, to and under any Letters Patent therefor;

"Now, therefore, for and in consideration of the sum of Five Dollars ($5.00) to us in hand paid, receipt whereof is hereby acknowledged, and for other good and valuable considerations, we have jointly sold, assigned, transferred and set over, and do hereby jointly sell, assign, transfer and set over unto said Patterson-Ballagh Corporation and its successors and assigns, all our right, title and interest in and to said invention hereinabove identified, and in, to and under any Letters Patent in any country which may be issued for the same; the same to be held and enjoyed by said Patterson-Ballagh Corporation and its said successors and assigns, throughout the full term or terms for which any such Letters Patent may be issued, as fully and completely as the same would have been held and enjoyed by us had this sale and assignment not been made.

"And we hereby jointly authorize and request the Commissioner of Patents, and any other official or officials thereunto empowered, to issue any and all such Letters Patent in accordance with the spirit of this assignment.

"In Testimony to the above, we have hereunto signed our names at said Los Angeles, California, the 20th day of October, 1928, in the presence of the subscribing witnesses.

"William I. Bettis
"James C. Ballagh
"Witnesses:
"Sybil H. Frunder
"May A. Parker
"Recorded Transfer of Patents U. S. Patent Office Nov. 10, 1928. Liber W 136 Page 641.
"Thomas E. Robertson
"Commissioner of Patents."

It is significant that it was dated on the same day on which Bettis and Ballagh signed their petition and power of attorney relating to the invention. The terms of the assignment will be seen to be very broad. It must be taken into consideration in determining the rights of the parties. The plaintiff himself so considers it; for, in his amended complaint, in charging the defendant with various illegal acts before the Commissioner of Patents, he declares them to be violative of the terms of this assignment.

So the answer to the question propounded is not complex. If the rights of the plaintiff and the controversy between him and the defendant arise under the assignment, which is merely a contract between the parties preceding the issuance of the letters patent, then it is clearly not within the jurisdiction of the District Court. The general principle is thus stated: "Actions brought to enforce contracts between private parties, *relevant to patent rights,* are not actions arising under the patent laws of the United States; and therefore are not cognizable as such in the United States Courts." 1 Walker on Patents (6th Ed. 1929) § 438. (Italics added.)

If, on the other hand, the question arises under the patent laws, then we have jurisdiction. 28 U.S.C.A. § 41 (7). The test by which it is determined whether actions arise under the patent laws is thus stated in Odell v. F. C. Farnsworth Co. (1919) 250 U.S. 501, 39 S.Ct. 516, 63 L.Ed. 1111:

"To constitute a suit under the patent laws the 'plaintiff must *set up* some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction, of these laws.' Pratt v. Paris Gaslight & Coke Co., 168 U.S. 255, 259, 18 S.Ct. 62, 64, 42 L.Ed. 458, 460.

"The party who brings suit is 'master to decide what law he will rely upon' and the allegations of his bill are the evidence, or the expression, of his decision, upon which the courts must act in determining the question of their jurisdiction." Odell v. F. C. Farnsworth Co., supra, 250 U.S. 501, at page 503, 39 S.Ct. 516, 63 L.Ed. 1111. (Italics added.)

Since the enactment of the Declaratory Judgments Act (28 U.S.C.A. § 400), courts have entertained declaratory judgments relating to patents where the plaintiff sought declaration of validity or invalidity of a patent, and whether there had been an infringement or not. A review of these cases may be found in the writer's opinion in Hann v. Venetian Blind Corporation (D. C.) 15 F.Supp. 372, 30 U.S.P.Q. 112. So if the plaintiff alleged that he is infringing the defendant's patent, and sought either relief or declaration against the actual or threatened acts of the defendants, his amended and supplemental complaint would have to be sustained. But he does not allege that he is guilty of infringement or contributory infringement. He avoids a direct allegation of either. Nor does he allege that the defendant claims that he is infringing or has threatened any suit against him, or that he is under legal liability to the defendant, or that any of his acts are or have been an infringement of patent No. 1,965,876. In other words, no legal relationship, cognizable under the patent laws, appears from the amended complaint. It is true that, *parenthetically,* here and there, the plaintiff, in his bill, speaks of acts upon his part which, if *alleged directly,* might constitute infringement or contributory infringement. But these allegations fall short of the directness necessary to treat them as statements of fact.

To illustrate, the plaintiff alleges: "That the applicators which plaintiff has *caused to be manufactured and used* are covered by the broad claims of the applicator patent No. 1965876, which defendant holds." (Italics added.) This allegation does not rise above the allegations preceding it, which show that he is *not* manufacturing either the protector or the applicator, but is merely licensing others to do so, under a licensing agreement under which he *does not* participate at all in the act of manufacturing, sale or distribution. He merely receives royalties for licensing others *to do so.*

Clearly, the owner (licensor) here is *not* the manufacturer. Without infringement by the manufacturer, there can be, ordinarily, no contributory infringement by any one else. If the manufactured product does not infringe, neither he who owns the patent and licenses the manufacturer, nor the user can be guilty of contributory infringement. And, even where the manufacturer does infringe, there can be no contributory infringement by others without their doing of some positive act in aid of infringement. 48 Cor.Jur. 320.

The plaintiff does not charge himself with any such act. And the mere act of licensing does not, ipso facto, constitute contributory infringement, where, as here, the licensor does not manufacture.

Elsewhere, in the bill of complaint, the plaintiff alleges: "Defendant has had ample time in which to bring suit to test the validity of said Letters Patent, but knowing full well of plaintiff's activities and of the activities of his licensees, their customers and the users of 'Bettis Protectors' has *neither brought suit against the plaintiff for contributory infringement by reason of his activities in causing to be manufactured,* sold and used applicators covered by the claims of the patent in suit, nor has defendant sued any of plaintiff's licensees or their customers or users of 'Bettis Protectors' by reason of using said applicators for placing said protectors in place upon the drill pipe." (Italics added.)

The italicized parenthetical reference, in this allegation, to the acts of the plaintiff as contributory infringement, falls short of constituting a direct allegation of such infringement. It is a mere conclusion which, when read in conjunction with the preceding allegations in which the plaintiff states specifically the acts for which he assumes responsibility, amounts to nothing more than a statement of the relationship between the plaintiff and the manufacturers of the article as that of licensor and licensees.

In sum, there is nowhere in the bill of complaint *a direct allegation* that the plaintiff is actually infringing the patent or is helping others to do so.

If the plaintiff is actually infringing, the defendant has the right to know and be informed, before he is called into court to defend his patent. Without a direct allegation to that effect, without the doing of an act which might be considered violative

of the rights of the defendant under the patent and a threat by him of an infringement suit, there is no controversy of which we can take cognizance.

■ The fact that the plaintiff's licensees have been ordered to desist does not entitle him to come to their aid and institute this action. For, if, *as the plaintiff claims,* the invention claimed by the defendant had been abandoned by the plaintiff and had become a part of the public domain, *he has no greater right in it than any one else.* To entitle him to dispute the patent rights of the defendant, he and the defendant must have some *real, actual* controversy relating to the claimed patent.

As the mere licensor of *another* patented device, in conjunction with which his abandoned invention is used, his mere assertion of the right of the public to use the abandoned invention does not give rise to any controversy. Any member of the public would have the same right. 35 U.S.C.A. § 31; 48 Cor.Jur. §§ 108–122.

As said by Mr. Justice Swayne in Consolidated Fruit Jar Co. v. Wright (1876) 94 U.S. 92, 96, 97, 24 L.Ed. 68: "A patent for an invention is as much property as a patent for land. The right rests on the same foundation, and is surrounded and protected by the same sanctions. There is a like larger domain held in ownership by the public. Neither an individual nor the public can trench upon or appropriate what belongs to the other. The inventor must comply with the conditions prescribed by law. If he fails to do this he acquires no title, and his invention or discovery, no matter what it may be, is lost to him, and *is henceforward no more his than if he had never been in any wise connected with it. It is made, thereupon, as it were by accretion, irrevocably a part of the domain which belongs to the community at large."* (Italics added.) And see Miller v. Hayman (Cust. & Pat.App.1931) 46 F.(2d) 188; Severson v. Olson (Cust. & Pat.App.1933) 64 F.(2d) 694.

Yet the only ones who *could* (or *should*) contest the right with the defendant would be those actually making the device or using it. In the instant case, that would mean the manufacturing licensees or the users. Provided, of course, they are actually doing acts which the defendant might consider an infringement of his patent. The bill of complaint *nowhere* alleges that they are guilty of any such acts.

■ The Declaratory Judgments Act cannot be resorted to for the purpose of allaying the fears of a person. Nor is it sufficient, in order to resort to its provisions, that there be a *mere possibility* of dispute. The controversy must be actual. Even in England, where the declaratory judgment originated in a rule of court, courts have refused to allow it to be used by a party against whom no right is being asserted.

In Re Clay, [1919] 1 Ch.Div.(Court of Appeal) 66, the plaintiff sought a declaration that the defendant had no claim against him under a bond. It appeared, however, that the defendant had never asserted any such claim. The court refused to grant declaratory relief. Swinfen Eady, M.R., said: "Here the position of the parties is that no claim is made by the defendant Booth, as against the petitioners, and the petitioners by their petition make no claim against the defendant Booth. The observations that were made by Cozens-Hardy, M.R., in Dyson v. Attorney General, [1911] 1 K.B. 410, 417, may properly be referred to. He there said: 'But I desire to guard myself against the supposition that I hold that a person who *expects* to be made defendant and who *prefers* to be plaintiff, can, *as a matter of right,* attain his object by commencing an action to obtain a declaration that his opponent *has no good cause of action against him.* The Court may well say: *"Wait until you are attacked* and then raise your defense," and may dismiss the action with costs.' This is really the position in the present case *The petitioners have not been attacked. No claim has been made against them;* but they launched these proceedings to have it determined that some one who has not made a claim and who has not asserted any right has no claim and has no right. In my opinion they are not entitled to do that. As has been pointed out by Duke, L. J., during the course of the argument, with regard to rights under contracts there are certain statutory limitations which fix the time during which actions may be brought, and a party to a simple contract has the full statutory period to determine whether or not he will bring an action. And it is not open to a person, certainly to one against whom no claim in fact has been made, to cut the matter short by bringing an action at his own option and saying: 'I wish to have it determined that you have no claim whatever against me.' That really is the nature of the proceedings in the present

case." [1919] 1 Ch.Div. 66, at pages 77, 78. (Italics added.)

Duke, L.J., said: "I agree entirely with the conclusions of fact at which the Master of the Rolls has arrived; and it is upon those findings of fact that my judgment in this case proceeds. I regard this defendant as a defendant who has done nothing which warranted the petitioners making him a defendant in an action. I do not myself believe that, in the ordinary case of possible controversy between parties, it is open to one of the parties because he apprehends a claim will be made against him, to serve a writ or other process upon the other party in order to obtain a decision that that claim could not be made. It seems to me to go far beyond anything which has existed in the past history of litigation in this country and to open up a vista—a great danger—of needless and costly controversy fomented by parties who delight in litigation. I am not referring to the parties in this case, although they have had to litigate a good deal. I am only referring to the grave prospect there is if any citizen who *possibly* supposes he may have litigation at some future time against him is entitled to safeguard himself and set his affairs right by making his *suppositious antagonist* the defendant to an action. That might tend to keep possible litigants in a very cautious frame of mind; but I do not think it is within the right of the subject to start legal proceedings in such a state of things. In the cases which have been referred to by the Master of the Rolls there is no trace of this right of *spontaneous litigation.* I do not myself find any trace of it as I read the judgments in Guaranty Trust Co. of New York v. Hannay & Co., [1915] 2 K.B. 536. No doubt if you detach expressions in the course of elaborate judgments from their context you may arrive at some very startling results; but I cannot doubt that any of the Lords Justices who were parties to that decision, would have been greatly surprised to hear some of the conclusions which are founded upon it here today". [1919] 1 Ch.Div. 66, at pages 78, 79.

In West v. City of Wichita (1925) 118 Kan. 265, 234 P. 978, 979, the owner of lots sought a declaration upon the reasonableness of a city zoning ordinance. It appearing that he had made no application for a building permit upon any of them, the court refused to entertain the action under the declaratory judgment statute, saying:

"The Weigand case is brought under the declaratory judgment law, to test the validity of all of the provisions of the ordinance. The plaintiff is the owner of several lots and blocks of lots located in different parts of the city, some in one district and some in another, as defined by the zoning ordinance. He had made *no* application for building permit to erect any kind of a structure upon any of his lots. His complaint is that many of the provisions of the ordinance *might interfere with uses which he might desire to make of his property, or prevent a sale of the property to some one who desired to make a specific use of it.* In so far as the authority of the city to pass a zoning ordinance making restrictions upon the use of property in certain designated districts, that question, is not open to controversy. It was settled by the decision of this court in Ware v. City of Wichita [113 Kan. 153, 214 P. 99], supra. The declaratory judgment law is available only 'in cases of actual controversy.' R.S. 60—3127. The zoning ordinance may be unreasonable when applied to a specific use which an owner desires to make of specific property, but until such a situation is presented there is no actual controversy between the owner of property and the city concerning the zoning ordinance. *The owner is not entitled to litigate under this statute questions which may never affect him to his disadvantage. To speculate upon possible uses that the owner or his vendee might desire to make of the property, and seek a judgment determining them, is simply to ask the opinion of the court with reference to a situation that may never arise."* West v. City of Wichita, supra, 234 P. 978, at page 979. (Italics added.)

The plaintiff here has no more right to have the validity of the patent adjudicated upon the ground that the defendant *might* interfere with his licensees, and the buyers and users, of the protectors manufactured by them, thereby *indirectly* affecting his royalties, than the owner of the lots in the case just cited had to speculate upon the possible loss that might accrue to him should any person to whom he might lease or sell the property desire to build in violation of the zoning ordinance. The claim in both cases is merely an apprehended and *not* an actual one.

A person merely apprehending or fearing the assertion of rights against him by another cannot bring him into court and

compel him to litigate. 1 C.J.S., Action, § 18, subd. 9, pp. 1030, 1031; Borchard on Declaratory Judgments (1934) pp. 36–40.

Back of this principle is the fact that judicial power can be applied only to actual controversies. It can be invoked only where there are claims of litigants seeking to protect or enforce rights or to prevent or redress wrongs. As said in Marye v. Parsons (1885) 114 U.S. 325, 5 S.Ct. 932, 934, 962, 29 L.Ed. 205: "But no court sits to determine questions of law in thesi. There must be a litigation upon actual transactions between real parties, growing out of a controversy affecting legal or equitable rights as to person or property."

This is equivalent to saying that, as a rule, the judicial function is the determination of controversies between parties, and that courts will not concern themselves with the settling of *abstract* questions of law which may never be involved in *actual* disputes regarding property or other rights. See Muskrat v. U. S. (1911) 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246; Massachusetts v. Mellon (1923) 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; New Jersey v. Sargent (1926) 269 U.S. 328, 46 S.Ct. 122, 70 L.Ed. 289; Nashville, C. & St. L. R. Co. v. Wallace (1933) 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191. Some of the cases just cited antedate the enactment of the Declaratory Judgments Act. But the principles declared in them have not been changed by that act. More, they *could not be*. In all, attempts were made to compel adjudications before controversies actually arose. The Supreme Court held that such anticipatory actions *did not fall* within the exercise of the judicial power of the federal courts. And the Declaratory Judgments Act *has not* changed the character of that power, or the essential requisites for its exercise, as defined in these cases.

As said in Ashwander v. Tennessee Valley Authority (1936) 297 U.S. 288, 56 S.Ct. 466, 472, 80 L.Ed. 688:

"Claims based merely upon 'assumed potential invasions' of rights are not enough to warrant judicial intervention. Arizona v. California, 283 U.S. 423, 462, 51 S.Ct. 522, 75 L.Ed. 1154.

"The act of June 14, 1934, providing for declaratory judgments, *does not attempt to change the essential requisites* for the exercise of judicial power. By its terms, it applies to 'cases of actual controversy,' a phrase which must be taken to connote a controversy of a *justiciable nature*, thus excluding an advisory decree upon a hypothetical state of facts." (Italics added.)

In the light of these principles, the controversy between the plaintiff and the defendant is *not* actual.

And, in the last analysis, the plaintiff's attack upon the defendant's patent is based upon the violation by the defendant and its assignors of the assignment made prior to its issuance. The chief act of the defendant, of which the plaintiff complains—that of causing to be patented an invention which the plaintiff, as the sole inventor, claims to have abandoned and to have dedicated to the public, more than two years before the filing of the application, acts which were followed by actual public use for more than two years—is violative of his rights arising under the assignment and of nothing else.

This assignment, *preceding* the issuance of the letters patent, is a contract like any other. It conveyed the title to the patent. It carried with it the whole interest, legal and equitable, in the patent, even if it had not contained (as it did) a request to the Commissioner of Patents that the patent issue in the name of the assignee. 1 Walker on Patents (6th Ed. 1929) §§ 319–322; 48 Cor.Jur. 239, 240, 244; Individual Drinking Cup Co. v. Osmun-Cook Co. (D. C.N.J.1915) 220 F. 335.

Such a contract *does not* come within the exclusive jurisdiction of the federal courts.

While there is some uncertainty in the earlier cases, the principle of the later cases is that stated by Mr. Chief Justice Fuller in Wade v. Lawder (1897) 165 U.S. 624, 17 S. Ct. 425, 427, 41 L.Ed. 851: "The general rule is that 'where a suit is brought on a contract of which a patent is the subject-matter, either to enforce such contract, or to annul it, the case arises on the contract, or out of the contract, and not under the patent laws.'" And see New Marshall Engine Co. v. Marshall Engine Co. (1912) 223 U.S. 473, 32 S.Ct. 238, 56 L.Ed. 513; American Well Works Co. v. Layne & Bowler Co. (1916) 241 U.S. 257, 36 S.Ct. 585, 60 L.Ed. 987; Odell v. F. C. Farnsworth Co. (1919) 250 U.S. 501, 39 S.Ct. 516, 63 L.Ed. 1111; Luckett v. Delpark, Inc. (1926) 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703. The ruling in the last-cited case was followed by our own circuit in a very recent case, Goss v. Henry McCleary Timber Co. (C.C.A.9, 1936) 82 F.(2d) 476,

477. And see Dobie on Federal Procedure (1928) p. 250.

The present suit, *although it concerns a patent,* turns merely upon the interpretation of a contract connected with the patent and antedating its issuance. And if a case is brought either to enforce or to set aside a contract, "federal jurisdiction is not found in the mere fact that the contract relates to patents." Lowry et al. v. Hert (C. C.A.6, 1923) 290 F. 876, 878.

Nor can the bill of complaint be sustained upon the ground of the alleged illegal actions in the Patent Office, by which the defendant converted the joint application into a sole application.

Such procedure is permissible. Union Switch & Signal Co. v. Kodel Electric & Mfg. Co. (C.C.A.6, 1932) 55 F.(2d) 173; Foltz Smokeless Furnace Co. v. Eureka Smokeless Furnace Co. (C.C.A.7, 1919) 256 F. 847. But even if it 'were not, the act of the defendant in so doing would amount to a violation of one right only, namely, *the right under the assignment.* Once more we are confronted with a violation of a contractual obligation which *cannot* be turned into an action under the patent laws merely because it concerns patents to be issued.

More, if we assume that the allowance of the conversion is an illegality committed by the Commissioner of Patents, as are alleged to be the other illegalities—such as that the Commissioner of Patents exceeded his authority in granting the patent because there is no oath upon the part of the applicant as to the subject matter covered by the claims, and in granting the same as a sole invention, when, in fact, it was the joint invention of the plaintiff and Ballagh—then the plaintiff is estopped from making these assertions.

This, for two reasons:

(1) His assignment distinctly authorizes and requests the Commissioner of Patents to issue *"any and all such letters patent."* This carried with it the knowledge that the Patent Office *might* change the claims as originally made. Foltz Smokeless Furnace Co. v. Eureka Smokeless Furnace Co., supra. And,

(2) Again, the illegalities alleged to have been committed in the Patent Office are clearly matters of *illegal procedure.* They may be questioned by the government only. See 1 Walker on Patents, (6th Ed. 1929) § 519; Western Glass Co. v. Schmertz Wire-Glass Co., (C.C.A.7, 1911) 185 F. 788; Foltz Smokeless Furnace Co. v. Eureka Smokeless Furnace Co., supra; Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co. (1924) 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316; Scovill Manufacturing Co. v. Radio Corp. of America, (D.C.N.Y.1935) 9 F.Supp. 239.

It follows that the amended and supplemental bill of complaint does not state facts to constitute a cause of action for declaratory or other relief.

However, there are certain allegations in it, relating to the manufacture of the patented article, which have been attacked by the defendant as ambiguous. These allegations might *(if the facts permit)* be turned into direct allegations whereby the plaintiff assumed *direct* responsibility for manufacturing the patented device of the defendant. He would thus charge himself directly with infringement or contributory infringement.

As already shown, the present bill of complaint charges neither with the directness which ought to obtain in a pleading of this character. Such allegations would give the court jurisdiction.

The motion to dismiss will therefore be granted, with leave to the plaintiff to amend within ten days, if so advised.

The motions for a better statement and for further and better particulars will also be granted. The motion to strike will be granted only as to paragraphs 13, 14; and 15 of the bill of complaint, relating to the illegalities in the Patent Office. It will be denied as to the others. Exceptions to the plaintiff.