JOHNSON & JOHNSON, a corporation,
Plaintiff,

v.

C. B. STENVALL, INC., a corporation,
Defendant.

United States District Court
S. D. New York.

April 8, 1961.

Ward, Neal, Haselton, Orme & Mc-Elhannon, New York City, Olson, Mecklenburger, von Holst, Pendleton & Neuman, Chicago, Ill., for plaintiff.

Bierman & Bierman, New York City, for defendant.

SOLOMON, District Judge.

Plaintiff, Johnson & Johnson, filed an action for damages and an injunction against defendant C. B. Stenvall, Inc., claiming that defendant, by manufacturing and selling an adhesive bandage is infringing plaintiff's patent No. 2,703,083.

Defendant denies both validity and infringement. At the trial, it appeared that the accused bandage, although in-ferior to the patented one, was practically identical to it, and I therefore announced that if the patent was valid, it had been infringed. This opinion shall be confined therefore to the issue of validity.

Defendant asserts that the patent in suit is invalid because of prior public use and no invention.

(1)

### Prior Public Use

On June 25, 1953, Thomas H. Shelley and William J. Gross, two of plaintiff's employees, filed a patent application in which they claimed that they had jointly invented a new and useful adhesive bandage.

Adhesive bandages had been on the market for more than 25 years prior thereto. However, practically all of such bandages, in the surgical dressing field, used crinoline, a heavily starched and dried gauze, as the facing material. These bandages were only moderately satisfactory because they lacked sufficient adhesive qualities. In other words, many of them would not stick properly when applied to the user's skin. The invention claims to have solved this problem by providing for instantaneous adhesion, or "quick-stick" through the use of a smooth, glossy, inert and easily removable facing which was placed in intimate contact with the adhesive mass. It was asserted that such a facing would impart to the underlying adhesive mass a smooth and glossy surface even when subjected to sterilization conditions.

Prior to any Patent Office action on the merits of the claims, they withdrew their application in favor of another joint application dated September 25, 1953, which covered the same claims but in greater detail.

On November 17, 1954, the Patent Office allowed five of applicants' claims as to method and ten as to composition.

On January 4, 1955, Gross alone filed a third patent application concerning the same basic claims. He asserted that he was the sole inventor and requested the Patent Office to make his sole application

a continuation-in-part of the prior joint application.

Shelley and Gross both filed affidavits in which they stated that at the time they filed their earlier applications, they believed they were the joint inventors, but that they later discovered that the invention covered by the claims allowed in the September, 1953, application were not their joint invention, but the sole invention of Gross.

Shelley disclaimed any status as inventor, singly or jointly in the allowed claims and requested that his name be stricken from the two prior joint applications. The Patent Office granted his request and also granted Gross' request that his sole application be treated as a proper continuation-in-part of the two earlier joint ones.

In the meantime, Bauer & Black, a firm active in the surgical dressing field, was also working in this area. A Johnson & Johnson inter-office memorandum dated March 13, 1953, a full three months prior to the first Gross and Shelley application, reported that Bauer & Black was testing its conventional adhesive strip bandage, "Curad", with a smooth facing. The memorandum contained information that Bauer & Black was conducting a marketing research survey in a Chicago grocery store to determine consumers' preference between its "Curad" with the old crinoline facing and one with a new smooth facing.

At least since 1948, plaintiff's research department had been perfecting a bandage with a smooth facing, and the 1953 memorandum recommended that immediate steps be taken to market the product. Shortly thereafter, another memorandum urged that a patent application be filed as quickly as possible.

The Bauer & Black market survey is the basis for defendant's first defense against the patent's validity—that of prior public use.

Specifically, defendant contends that Gross' effective filing date is January 4, 1955, and that the patent is invalid because of the public use by Bauer & Black more than one year prior to the filing date. 35 U.S.C. § 102(b).[1]

Defendant asserts that Gross is not entitled to an effective filing date of June 25, 1953, for the reasons that (a) he failed to meet the statutory requirement of 35 U.S.C. § 120 that the earlier application and the continuation application be filed "by the same inventor"; and (b) the affidavits submitted by Gross and Shelley in support of their petition to declare Gross the sole inventor failed to meet the specific requirements set forth in Rule 45(b) of the Rules of Practice of the Patent Office, 35 U.S.C.Appendix.

At the oral argument at the conclusion of the testimony, counsel for defendant also contended that the 1955 application failed to meet the requirement of 35 U.S.C. § 120, in that the invention described therein was not disclosed in either of the 1953 applications. In his written brief, filed several months thereafter, this ground was not mentioned. On the basis of the undisputed facts, this contention is so clearly without merit that I shall regard it as having been abandoned.

The issue as to the necessity for having the same inventor file both the earlier application and the continuation-in-part application in order to take advantage of the earlier filing date was considered and decided adversely to defendant's contention in In re Roberts, 1920, 49 App.D.C. 250, 263 F. 646, 647. The court there framed the issue as follows:

"* * * [W]here it appears that a joint application has been filed through mistake or inadvertence and without fraudulent intent, * * * [is] the sole inventor, one of the joint applicants, * * * estopped

---

1. "A person shall be entitled to a patent unless * * * (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States * * *".

from taking any advantage of that application?"

The Patent Office had held that the sole applicant was a different entity from the joint applicants, and hence the sole application could not be considered in any circumstance as a continuation of the old one. The Court of Appeals reversed the Patent Office decision stating that since there was identity of subject matter, there was no reason for not permitting the elimination of one of the joint applicants to whom credit mistakenly had been given for the invention. The court held that in view of the fact that the amendment was proper, the filing of what in effect was a duplicate application by the actual sole inventor should have been regarded as a continuation of the former application.

■ I agree with the reasoning of the court in the Roberts case and reject defendant's contention that the earlier applications and the continuation-in-part application of Gross were not filed by the same inventor.

Defendant next asserts that Gross is not entitled to the earlier filing date because the affidavits supporting Gross' application that he be declared the sole inventor failed to meet the requirement that the ultimate facts be verified by tangible evidence. Rule 45, Rules of Practice of the Patent Office.

The defendant's reliance on Application of Strain, 1951, 187 F.2d 737, 741, 38 CCPA 933, is misplaced. In that case, the Court of Customs and Patent Appeals affirmed the decision of the trial examiner, who held that a continuation-in-part application was insufficient because the supporting affidavit failed to set forth any of the essential facts upon which the contentions of error and mistake in the filing of the original joint application were based.

■ There, the court merely had to find that there was substantial evidence to support the trial examiner's ruling. Here, where the Patent Office held that the affidavits were sufficient, this court, to reverse, would have to find that the ruling was arbitrary and capricious and that the strong presumption that the Patent Office does not violate its own rules had been overcome. Scovill Mfg. Co. v. Radio Corporation of America, D.C.S.D.N.Y.1935, 9 F.Supp. 239, 243.

■ In addition, even if there were illegalities or irregularities committed in the procedure leading up to the issuance of the patent, in 'the absence of fraud they may not be made the subject of a collateral attack by a defendant in an infringement suit. Mahn v. Harwood, 1884, 112 U.S. 354, 5 S.Ct. 174, 6 S.Ct. 451, 28 L.Ed. 665; Wayne Mfg. Co. v. Coffield Motor Washer Co., 8 Cir., 1915, 227 F. 987, 991; Bettis v. Patterson-Ballagh Corp., D.C.S.D.Cal.1936, 16 F. Supp. 455, 463. This is precisely what defendant is attempting to do here.

I find that the plaintiff, as assignee of the Gross patent, is entitled to an effective filing date of June 25, 1953, and that the defense of prior public use is without merit.

### (2)

### No Invention

Defendant contends that the patent in suit was anticipated by the prior art, does not disclose any patentable invention over the prior art, and the disclosure is a mere substitution of materials which does not amount to invention.

### a.

Defendant asserts that the patent in suit is invalid because there are three patents [2] which disclose the invention, applications for which were filed prior to the date of the Gross invention. 35

---

2. (1) Banff U.S. Patent No. 2,721,550, issued October 25, 1955, upon an application filed June 1, 1954, which was a continuation of an application filed March 21, 1950.

(2) Pronio U.S. Patent No. 2,702,772, issued February 22, 1955, upon an application filed December 20, 1951.

(3) Huerre U.S. Patent No. 2,728,687, issued December 27, 1955, upon an application filed September 17, 1952.

U.S.C. § 102(e).[3] Defendant asserts that this is true even assuming that Gross is entitled to an effective filing date of June 25, 1953.

To meet this defense, plaintiff has elected to prove that Gross is entitled to a pre-filing date of invention.

The evidence disclosed that on January 13, 1948, Gross requested plaintiff's manufacturing department to produce a small quantity of adhesive bandages. In July, 1948, an additional quantity of adhesive bandages was produced. Gross testified that the bandages in both lots had smooth continuous cellulose acetate facing members. He further testified that he found that the facing members of these experimental bandages were inert with respect to the adhesive mass and that in most instances the facings were in intimate contact with it; that the facing member had good releasability and that the adhesive quality had been remarkably enhanced. Gross' testimony was corroborated by his assistant, Benjamin Blackford. A progress report prepared by Gross, dated August 31, 1948, corroborates the testimony of both Gross and Blackford. In addition, I have examined the experimental bandages in both lots, and find that they possess the qualities contained in the progress report and in the testimony of Gross and Blackford. There was no contrary evidence.

 Although a party seeking to establish a pre-filing date of invention must assume a heavy burden and the court "must be persuaded with a certainty which is seldom demanded elsewhere; quite as absolute as in a criminal case * * *"; United Shoe Machinery Corp. v. Brooklyn Wood Heel Corp., 2 Cir., 1935, 77 F.2d 263, 264; Bearings Co.

of America v. D. P. Harris Hardware & Mfg. Co., 2 Cir., 1924, 299 F. 782; I find that the evidence adduced here meets that high standard and establishes an invention date of 1948.

 Defendant nevertheless contends that Gross cannot make use of the 1948 date, on the ground that he subsequently abandoned the invention. There is no merit to this contention. The testimony clearly shows that the period from 1948 to 1953 was not a period of inaction as defendant asserts, but was one of continuous activity, primarily centered around Gross' efforts to overcome certain technical objections of plaintiff's merchandising department. In addition, even if the defense of abandonment had merit, it was neither pleaded in the answer nor noticed in writing at least 30 days before the trial as required by 35 U.S.C. § 282, and therefore is not entitled to consideration. This defense must likewise fail.

**b.**

 In connection with defendant's contention that the Gross invention was disclosed by publications issued and patents granted more than one year prior to Gross' effective filing date, defendant first relies on Cederroth, an abandoned Swedish patent application. There is no basis for this reliance. Applications which do not eventuate in patents do not constitute prior publication and are not part of the prior art. White Cap Co. v. Owens Illinois Glass Co., 6 Cir., 1953, 203 F.2d 694, certiorari denied 1953, 346 U.S. 876, 74 S.Ct. 128, 98 L.Ed. 384.

Defendant next relies on some Cederroth circulars and eight patents. In my view, the Cederroth circulars and six of the patents which defendant alleges are anticipatory[4] do not require individual

3. "A person shall be entitled to a patent unless * * * (e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent."

4. (a) Peck U.S. Patent No. 2,432,541, granted December 16, 1947.
 (b) Britton British Patent No. 616,511, granted January 21, 1949.

(c) Morgan U.S. Patent No. 2,484,045, granted October 11, 1949.
(d) Dahlquist U.S. Patent No. 2,532,011, granted November 28, 1950.
(e) Calvert U.S. Patent No. 2,541,498, granted February 13, 1951.
(f) Reese U.S. Patent No. 2,583,341, granted January 22, 1952.

treatment. For example, the circulars and several of the patents deal with various types of facing materials to cover or protect bandage pads, labels, vulcanized rubber and other tacky bodies, from dust, dirt, fraying and from adhering to one another prior to use. Not one of them shows any appreciation of the problem sought to be solved by Gross, nor do they point the way towards such solution.

The patent upon which defendant most heavily relies is Donaldson No. 2,450,083, a file wrapper reference. Donaldson discloses the use of a specially impregnated paper for the protection of adhesive sheets of tape "when stored or when wound onto a spool" as a substitute for gauze or crinoline. The paper is "impregnated with a synthetic resin binding the lint fibres on the surface of the paper to the base thereof * * *" so that when the paper is removed from the adhesive surface, there will be no adherence of any particles of one material upon the other.

The other patent upon which defendant strongly relies is Sander—a German patent No. 679,267. In Sander, the gauze facing on a bandage is impregnated with polyvinyl or polyacrylic products, to prevent the loss of adhesive material from the bandage, when the facing is being removed. In other words, the impregnation is done to preserve the adhesive and prevent its destruction or decomposition.

The patent states that the "impregnation * * * results in a smoothing out of the gauze." Neither Donaldson nor Sander necessarily requires that the facing have a smooth and continuous surface —the central ingredient of the Gross invention.

The testimony at the trial showed that gauze, when dipped in accordance with the teaching of the Sander patent, was not smooth and continuous. To make a smooth surface, it would be necessary to coat the fabric four times, a procedure neither suggested nor taught by Sander.

The testimony also revealed that when Gross attempted to use a paper lining under the Donaldson patent, he met with failure because the bandages delaminated after sterilization.

However, even if the gauze facing and paper linings had smooth and continuous surfaces, neither of these two prior art patents would have anticipated Gross because neither was intended nor designed to accomplish the function of Gross, Topliff v. Topliff, 1892, 145 U.S. 156, 161, 12 S.Ct. 825, 36 L.Ed 658; neither would have suggested the patented idea to a person skilled in the art unless he were examining it for that purpose, Cold Metal Process Co. v. Carnegie-Illinois Steel Corp., 3 Cir., 1939, 108 F.2d 322, 333, certiorari denied 1940, 309 U.S. 665, 60 S.Ct. 590, 84 L.Ed. 1012; and neither contained within its four corners, adequate directions for practicing the Gross invention, Dewey & Almy Chemical Co. v. Mimex Co., 2 Cir., 1942, 124 F.2d 986, 989.

None of the prior art references, considered either individually or collectively, disclosed the Gross invention. Smooth, continuous facings of plastic materials were known in the art, but their use was confined to the pursuit of other and different results, and there was a total unawareness that such a facing could be employed under the conditions outlined in Gross to achieve greater, quicker and more satisfactory adhesiveness. The differences between the Gross invention and the prior art were so significant that it cannot be said that the invention would have been obvious to a person having ordinary skill in the art. In fact, the great amount of research in which the industry had engaged for a number of years to obtain more satisfactory adhesiveness, the great impact the plaintiff's bandage had on the market, and its phenomenal commercial success amply justify the conclusion that the result achieved by Gross was both surprising and unexpected. Reiner v. I. Leon Co., 2 Cir., 1960, 285 F.2d 501.

c.

Finally, defendant claims that Gross merely substituted smooth films of or-

ganic materials for crinoline on the bandage facings and that the substitution of a modern material with known characteristics for another material does not amount to invention.

The substitution of one material for another ordinarily does not amount to invention. Hotchkiss v. Greenwood, 1850, 52 U.S. 248, 13 L.Ed. 683; Dewey & Almy Chemical Co. v. Mimex Co., supra. However, substitutions have uniformly been held inventive in those cases in which the substitution solved a significant problem which prior efforts have failed to handle satisfactorily. Smith v. Goodyear Dental Vulcanite Co., 1876, 93 U.S. 486, 496, 23 L.Ed. 952; Perma-Fit Shoulder Pad Co. v. Best Made Shoulder Pad Corp., 2 Cir., 1955, 218 F.2d 747, 751.

The fact that the new substituted material had properties well known to the trade or even to the general public, or the fact that the substitution does not involve discovery or utilization of an unknown or unexpected property of the material is of no significance. George Frost Co. v. Cohn, 2 Cir., 1902, 119 F. 505; Carbide & Carbon Chemicals Corporation v. Coe, 1938, 69 App.D.C. 372, 102 F.2d 236; United Shoe Machinery Corp. v. E. H. Ferree Co., 2 Cir., 1933, 64 F.2d 101.

For many years prior to the Gross invention, the surgical dressing industry was confronted with many problems in connection with sterile adhesive bandages sold to the general public. Consumers frequently complained that the bandages failed to stick quickly or sufficiently when applied to the skin.

Numerous attempts were made to solve this problem by increasing the adhesive power of the mass. These attempts proved unsuccessful and often resulted in greater problems. Higher adhesive powers of the mass made the bandages adhere to the skin so tenaciously that their removal was painful and left a sticky deposit on the user's skin. This attempted solution created problems of processing and manufacture, particularly in connection with sterilization and the lateral flow of the mass beyond those areas intended to be covered with adhesive.

In spite of the fact that crinoline facings were almost universally employed, no one prior to Gross found that the solution to the problem lay in changing the facing from crinoline—a rough starched gauze —to a smooth, inert, organic material. This was probably due to the widespread belief that the rough surface in the adhesive mass caused by the crinoline facing afforded greater opportunity for adhesion to the skin.

Gross found the solution to the problem by replacing the crinoline facing with a facing member of an organic material containing the following characteristics when applied in the following manner:

(1) The film should present a surface that is smooth and continuous.

(2) The film should comprise an organic material that is substantially inert with respect to the mass used in forming the adhesive areas of the bandage.

(3) The film must be brought into and maintained in such intimate contact with its underlying adhesive coating that air pockets will be excluded and there will be imparted to the underlying adhesive coating the smooth surface of the film.

(4) The film should have good releasability.

The Gross invention was much more than a mere substitution of materials. It was the solution of a significant problem which prior efforts had failed to handle satisfactorily.

### Conclusion

I find that:

1. United States Patent No. 2,703,083 (the Gross patent which had been assigned to plaintiff) is valid as to the claims in suit; namely, claims 1, 2, 3, 9, 11 and 12.

2. The defendant has infringed such claims.

3. The defendant is enjoined from further acts of infringement.

4. Plaintiff is entitled to an accounting for profits and damages.

5. Plaintiff's claim for attorney fees is disallowed.

6. The defendant's counterclaim for a declaratory judgment of invalidity and non-infringement is dismissed on the merits.

The foregoing opinion will serve in place of findings of fact and conclusions of law, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.

Settle decree.