**R. A. HENDERSON, Appellant,**

**v.**

**A.C. SPARK PLUG DIVISION OF GENERAL MOTORS CORPORATION, Appellee.**

**R. A. HENDERSON, Appellant,**

**v.**

**FORD MOTOR COMPANY, Appellee.**

**Nos. 20740, 20741.**

United States Court of Appeals
Ninth Circuit.

Sept. 22, 1966.

Tom Sherrard, San Diego, Cal., for appellant.

Francis A. Utecht, Fulwider, Patton, Rieber, Lee & Utecht, Los Angeles, Cal., for appellee Ford Motor Co.

Richard E. Lyon, Lyon & Lyon, Los Angeles, Cal., J. L. Carpenter, Detroit, Mich., for appellee A.C. Spark etc.

Before BARNES, JOHNSEN* and HAMLEY, Circuit Judges.

BARNES, Circuit Judge:

Before us are two in forma pauperis appeals from summary judgments entered in the district court dismissing with prejudice two amended complaints of plaintiff alleging patent infringement by each of two defendants of plaintiff's U. S. Patent No. 3,088,447, entitled "Control for Automotive Exhaust Air Pollution".

While there is much in the briefs about infringement and patentability, there are but two issues before us: (1) Was Claim 6[1] of the Henderson Patent No. 3,088,447 anticipated by prior art, i. e., the Hanks Patent No. 2,354,-373? (2) Was there public use and sale more than one year prior to December 5, 1961? We affirm on a positive answer to each question.

I

The trial court made specific findings on the issue: "Positive crankcase ventilation systems" for internal combustion engines for automobiles have "long been

---

* Harvey M. Johnsen of the Eighth Circuit, sitting by designation.

1. Claim 6 of Patent No. 3,088,447 was the only portion of said patent finally be-

fore the court as to General Motors. The other 5 claims had been disposed of by a Partial Summary Judgment (entered July 14, 1965) from which no appeal was taken.

known" in the trade. (C.T. p. 14, Finding III.) The "usual" components were found to be: "a hose or a pipe, a flow control valve, appropriate connectors and an adapter plate for insertion between the carburetor and the intake manifold of the engine." (C.T. p. 14, Finding IV.) The patent in suit adds: (a) an adjustable needle valve at the intake manifold, and (b) heating means in the adapter to heat the fed back crankcase vapors. It was this last addition which Claim 6 of the patent purports to cover. (C.T. p. 14, Finding IV.)[2]

Application for the Henderson Patent No. 3,088,447 was filed December 5, 1961. It was a continuation-in-part of U. S. Application Serial No. 86,565 filed by Henderson January 25, 1961. The invention asserted in Claim 6 is not described in the earlier application (C.T. p. 15, Finding VI).

The alleged anticipating patent— Hanks Patent No. 2,354,373 was issued July 25, 1944. Each of the elements of Claim 6 (described in detail in Findings VIII and IX; C.T. pp. 16–17) were found to exist in the Hanks patent (C.T. p. 17, Finding X), which was not cited as a reference during prosecution of the Henderson patent (C.T. p. 17, Finding XI). The trial court further found General Motors had commenced the manufacture and sale of the alleged infringing device in September 1960, and continuously manufactured and sold them since that date. (C.T. p. 17, Finding XII.)

In its Conclusions of Law the trial court found both anticipation by the Hanks earlier patent (C.T. p. 18, Concl. III), and the required prior use and sale (C.T. p. 18, Concl. IV).

Because of the foregoing findings, the trial court held that the pleadings and testimony did not raise any genuine issue on any material issue of fact. This is the sole error claimed on appeal. (Appellant's Brief, p. 6.)[3]

Appellant asserts the question presented is whether "the expediency of a dismissal summarily given outweigh the patent purpose on an important invention where the parties do not agree on facts pertinent to the alleged anticipation." (Brief, p. 6.)

Primarily, appellant attacks the testimony of the expert appointed by the trial judge to assist him in determining the issues. He asserts that "the expert's testimony is pregnant with admissions that issues of fact exist," yet there is but one reference in appellant's brief to this alleged plethora of issues of fact.

At page 13 of his brief, appellant states:

"[T]here's admittedly an issue of fact as to whether or not the earliest filing date Henderson can claim is December 5, 1961. Mr. Kotts, the Court appointed expert, stated that if there was adequate disclosure in Henderson's first application he can take the benefit of this filing date. See page 11, beginning line 4 of Reporter's Transcript. *He says in other words, there is a genuine issue of fact.*" (Emphasis added).

The italicized statement is neither logical nor complete, though accurate as far as it goes. Immediately following the reference to "adequate disclosure," the court's expert stated:

"If he cannot take the benefit of this earlier application, then if everything stated in the affidavit [would be] correct, that would be a statutory bar since there would have been a sale more than a year prior to his effective

2. Similar, though not precisely the same, findings were made in favor of Ford Motor Co. in the companion case. (C.T. pp. 81–85.) Conclusions—(a) there was no infringement of Claims 1 through 5; (b) the Hanks patent anticipated the Henderson Claim 6 by more than a year, and hence Claim 6 was invalid under 35

U.S.C. § 102(b); (c) there was no genuine issue of fact.

The two cases were filed consecutively, and tried together, and we will consider them together, despite some difference in issues.

3. Appellant's brief makes no attempt to comply with our Rule 18.

filing date, the filing date of the second application which issued into the patent." (R.T. p. 11.)

The expert then stated:

"It is my opinion that his disclosure in his first application was insufficient due to the [patent] office action issued by the Examiner which stated that he could not understand the invention and advised filing a new specification." (R.T. p. 12, l. 18–21.)

There is no dispute (a) regarding the fact of the patent examiner's action, *specifying the lack in detail* (shown in the file history (R.T. pp. 16–17)); (b) the fact there was a lack of any response thereto by Henderson; *except* (c) the fact of the filing of new papers by Knox and Knox; (d) the fact that the new papers contained a more detailed description of the alleged claim of invention.

There also is no dispute that Mr. Henderson testified he and Mr. Trimble (who filed the first application) "were aware that the patent was not put together so that the Commissioner would understand it." (R.T. pp. 19, 20.)

There seems no question but that the only date upon which appellant can rely is the filing date of his application, namely December 5th, 1961. Under 35 U.S.C. § 102(b) the critical date is one year prior to said application—i. e., December 5, 1960.

It is uncontradicted that General Motors introduced its crankcase ventilation system in September 1960, and has manufactured and sold the same continuously since then. (See Majewski Affidavit (C.T. pp. 20–28) and Exhibits attached.)

Appellant urges that the epigrammatic expression: "That which infringes, if later, would anticipate, if earlier" is too broad a statement of law. If by this appellant takes the position that General Motors' earlier sales do not invalidate Claim 6 because the devices General Motors sells do not embody the invention claimed by Claim 6, then appellant's claim must ultimately fail for lack of

infringement. Anderson v. Miller, 129 U.S. 70, 9 S.Ct. 224, 32 L.Ed. 635 (1889).

It is not difficult for a layman to distinguish between the appellant's earlier application, and Claim 6 of his patent. There is no flow control valve in the former, as there is in the latter, and in the Hanks patent.[4]

■ Thus both because of the admitted inadequacy of the original disclosure, and the obvious material difference between the original and Claim 6 specifications, appellant is bound by the December 5th, 1961 date (35 U.S.C. § 102(b)).

As to the existence of any material issue of fact, we are faced with the problem that appellant was content to have the matter submitted to the court with little cross-examination of the court's expert witness plus the testimony of appellant's own expert (R.T. p. 25 et seq.), an expert but "slightly familiar" with the Hanks patent (R.T. p. 34). Appellant filed no counteraffidavits or memoranda. He failed to argue below that he was entitled to the filing date of his abandoned application (with the inherent problem of how much it disclosed); nor did he ask his expert (Neill) about it. In the appellant's brief on appeal no attempt is made to point out that the abandoned application contains a description of the elements required by Claim 6 of the patent in suit.

■ We are required to affirm as to General Motors on the issue of prior use and sale.

II

■ On the issue of anticipation by the Hanks patent, raised by both defendants, we refer to Exhibits NN attached to the Majewski affidavit. The court's expert, Mr. Kotts, testified all elements of Henderson's Claim 6 are present in the Hanks patent. It was his expert opinion that no expert testimony was required to prove the Henderson Claim 6 invalid as anticipated; that a layman's comparison of the documents established this beyond doubt.

4. Reporter's Transcript, pp. 34–37, 44.

Appellant makes several general statements to the contrary, with but one specific reference (as is required by the rules of this court). At page 3, appellant states that at page 46, lines 11 and 12 of the Reporter's Transcript, one feature of the Henderson device was described as exactly opposite that of the Hanks device.

We agree with the appellee's (General Motors') argument on this point.[5]

■ The mere statement that "an issue exists" does not prevent the granting of a summary judgment below. To abide by such a rule would emasculate the statute permitting such judgments.

■ Nor is it sufficient to rely on the "strong presumption" that a patent in suit is valid [6] (particularly when such presumption has repeatedly been held "largely dissipated" by the failure to find in the file wrapper a reference to earlier pertinent art, as here exists). The presumption then is that the prior art was not considered by the patent office. Nor can appellant rely on the statement that his patent is "important." All patents are important, and there is no such thing as a "little" patent, if it be valid; any more than there can in law be a "small" injustice.

■ Summary judgments are not prohibited in patent suits.[7] This is true even if there are counter-affidavits.[8]

In Cee-Bee Chemical Co. v. Delco Chemical Co., 263 F.2d 150 (9th Cir. 1959), relied upon strongly by appellant, the issue was whether a "soapy" spray and a "water-rinsable, solvent-miscible" spray are one and the same. We held that the "sameness" having been denied in counter-affidavits filed by defendant, plaintiff was not entitled to rely on its assertion that the two sprays were the same, and that a genuine issue of material fact existed.

5. "The matter involved is in no way material. Neill testified that the Hanks flow-control valve operated in the opposite manner to that of Henderson (Nov. 8 Tr. 46). While Neill was incorrect in his statement, the matter is of no moment. Claim 6 simply calls for a flow-control valve operable by engine induced vacuum. It does not require that the valve operate in any particular direction or manner. Thus, the 'issue' suggested by plaintiff is not a material one. Similarly, but in more general terms, plaintiff argues that there are differences between the device described in the patent in suit and that of the Hanks patent. Any such differences are, of course, immaterial as to the validity of claim 6 unless these differences are set forth in the claim. See Winslow Engineering Company v. Smith, (C.A.9, 1955) 223 F.2d 438 (adhered to on rehearing, 228 F.2d 332).

"Next, plaintiff states (Appellant's Tr. 3) that Mr. Henderson gave direct testimony on the factual differences between his device and the earlier Hanks device and refers to page 22, lines 15 through 25 of the November 8 transcript. Plaintiff's characterization of his portion of the Record as 'direct testimony' is very misleading. Mr. Henderson had not been sworn as a witness nor was he on the stand. To the contrary, the court had simply asked Mr. Henderson if he had any questions to put to Mr. Kotts the court's expert who was then on the stand (Nov. 8 Tr. 19). Rather than questioning Kotts, Mr. Henderson proceeded simply to argue his cause. This fact was noted by the court (Nov. 8 Tr. 24).

"The full statement referred to, commencing on page 21 and continuing through page 24 of the transcript, shows that what Mr. Henderson was really arguing was that his device differed from Hanks in that he utilized a catalyst and screens and that these elements were not shown by Hanks. Both the court and Kotts pointed out to him that claim 6 contains no reference to either screens or a catalyst and therefore his argument had no relevancy on the question of anticipation." (Brief of Appellee General Motors, pp. 19–20.)

6. Monroe Auto Equip. Co. v. Superior Industries, Inc., 332 F.2d 473 (9th Cir. 1964), cert. den. 379 U.S. 901, 85 S.Ct. 190, 13 L.Ed.2d 175 (1964); Pressteel Co. v. Halo Lighting Prods., Inc., 314 F.2d 695 (9th Cir. 1963); Jacuzzi Bros., Inc. v. Berkeley Pump Co., 191 F.2d 632 (9th Cir. 1951).

7. Milcor Steel Co. v. George A. Fuller Co., 316 U.S. 143, 62 S.Ct. 969, 86 L.Ed. 1332 (1942); Englehard Industries, Inc. v. Research Instrumental Corp., 324 F.2d 347 (9th Cir. 1963).

8. Rankin v. King, 272 F.2d 254 (9th Cir. 1959).

We find no such genuine issue of material fact here exists, and Cee-Bee Chemical, supra, is therefore not controlling.

It is the duty of the trial court to dismiss a patent suit when the necessary showing is made on a motion for a summary judgment.[9]

Affirmed.

---

9.   Barkeij v. Lockheed Aircraft Corp., 210 F.2d 1 (9th Cir. 1954).