**William V. KARR et al., Plaintiffs,**

v.

**BOTKINS GRAIN & FEED COMPANY, Defendant.**

**Civ. A. 6923.**

United States District Court, S. D. Ohio, E. D.

March 6, 1970.

R. Brooke Alloway, Jerome R. Cox and Frank H. Foster, Columbus, Ohio, for plaintiff.

Richard H. Evans, Eugene P. Elsaas and Truman A. Herron of Cincinnati, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, District Judge.

This action was brought by plaintiffs for relief in the form of an injunction and compensatory damages for the alleged infringement of United States Patent No. 2,733,145. The jurisdiction of this action is based on Title 28, United States Code, Sections 1338, 1391 and 1400, and Title 35, United States Code, Sections 271 and 281, and it is not contested.

On January 31, 1956, the United States Patent Office issued to plaintiffs the patent which is herein alleged to have been infringed. The application for such patent was initially made on January 15, 1953. After earlier rejections and amendment, the issued patent contained in its list of claims the following:

* * *

4. A livestock feed comprising the outer glume, beeswing and pith components only of a ground corn cob and molasses.

* * *

6. The method of producing a concentrated livestock feed, which comprises: mechanically reducing whole corn cobs to a relatively finely divided form, the cobs consisting of a relatively heavy woody ring fraction in a major percentage by weight and outer glume, beeswing and pith comprising light fractions in minor percentages, separating the woody ring fraction from the remaining light frac-

tions; drying and further reducing the separated light fractions to form an absorptive nutritive meal substantially free from woody ring constituents: admixing with said meal and in absorptive relation therewith a nutrition-improving food supplement; and thereafter subjecting the resultant meal with the food supplement contained therein to further drying to form a concentrate for admixture with other more bulky animal feeds.

7. The method of claim 6, and wherein the food supplement comprises molasses, the latter being present in quantities at least equal in weight to those of cob constituents with which the supplement is admixed.

Claims 4 and 7 are the only ones at issue in the instant suit inasmuch as prior to trial plaintiffs filed disclaimers as to Claims 1, 2, 3, 5 and 6.

The patent states that prior to the time of plaintiffs' invention livestock feed was produced by combining ground whole corn cobs with molasses. Molasses was admixed in a proportion of about twenty per cent to forty per cent of the weight of ground cob. Such a combination was deemed:

\* \* \* objectionable as a livestock feed primarily because of the relatively large percentage of the more or less nonabsorbent and fibrous woody ring constituent of the cobs and the failure of such woody ring constituent to contribute anything toward the absorptive properties of the carriers or the nutritional qualities of the feed itself. In short, the woody ring constituent of a corn cob comprises approximately 60% by weight of the cob and is composed primarily of cellulosic material practically devoid of any valuable nutritional properties, and is only slightly absorbent in comparison with the remaining constituents of the cob, namely, the outer glume, beeswing, and pith.

It is further stated that the "primary object" of plaintiffs' invention was:

\* \* \* to provide an improved method for producing livestock feed comprising only the valuable constituents of corn cobs admixed with other nutritional food products, and wherein the whole cob, following husking and removal of kernels, is reduced or ground in a hammer mill, or other equivalent reduction apparatus, and thereafter separated or classified to remove the woody ring constituent of the ground cob, leaving a lightweight meal or bran composed of the pith, the outer glume and beeswing which is then dried to a low moisture content and further ground into the form of a fine meal and mixed with 50% to 75% by weight of molasses, or other nutritional food material or materials, and, thereafter subjected to further drying, in order to form a highly concentrated and nutritionally valuable feed for admixture with other and more bulky feeds, such as hay or the like.

In its defense against plaintiffs' complaint, defendant has asserted that it is not liable to plaintiffs because:

1. The Karr patent is invalid; and

2. Even if the patent is valid, the Botkins' products do not come within the claims of that patent.

The alleged invalidity of the patent is based on publications, patents and use of the Karr "invention" prior to the date of invention by the Karrs. Unless a party can establish to a certainty "quite as absolute as in a criminal case" that his date of invention preceded the date of his patent application, he is bound by the application date as the date of invention. Oelbaum v. Lovable Co., 211 F.Supp. 594 (S.D.N.Y.1962), affirmed, 322 F.2d 1022 (2d Cir. 1963); Johnson & Johnson v. C. B. Stenvall, Inc., 193 F.Supp. 128 (S.D.N.Y.1961). The evidence produced by plaintiffs, relative to the establishment of a pre-filing date for their invention, has convinced the Court to the required certainty that a pre-filing invention date existed. The earliest date established by that evidence is August 18, 1952. Thus, any prior art must ante-

date August 18, 1952, if it is to serve to invalidate the patent. Title 35, United States Code, Section 102.

■■ Plaintiffs have relied heavily on the "strong" statutory presumption of the validity of their patent to meet the citations of alleged prior art by defendant. Title 35, United States Code, Section 282. However, that presumption is "strong" only when considered against prior art references considered by the Patent Office. Henderson v. A. C. Spark Plug Division of General Motors Corp., 366 F.2d 389 (9th Cir. 1966). While plaintiffs have made much of the failure of defendant to show that certain alleged prior art was not before the Patent Office examiner, their reliance appears to be misplaced. Failure to find references to such prior art in the file wrapper creates a presumption that they were not considered by the examiner. It was then plaintiffs' burden to meet this presumption. *Henderson, supra.* The record in this case is devoid of any proof that any prior art not cited in the file wrapper of plaintiffs' patent was considered by the examiner. Thus, it may be presumed that only United States Patent No. 1,598,328 (August 31, 1926) [Truax], United States Patent No. 2,-160,914 (June 6, 1939) [Schmidt], and Great Britain Patent No. 4,505 (1875) were considered by the examiner, and that all other pertinent prior art references were not considered.

Defendant has produced a publication of the United States Department of Agriculture bearing the publication date of May, 1952. While plaintiffs' post-trial briefs contain extensive passages relative to defendant's failure to establish the actual publication date of that article, a stipulation signed by the attorneys for the parties and filed on June 21, 1967, states:

1. That uncertified copies of publications * * * may be accepted in the above-entitled case * * *, and the dates of issue and publication of said publications appearing thereon will be accepted as correct, subject to correction if error occurs.

* * *

3. The above two paragraphs relate to all exhibits now of record in the case introduced by either party.

4. The above stipulations shall be extended to all papers of like character subsequently introduced in the case, subject to the usual objections for relevancy, immateriality and competency.

The May, 1952 publication was later admitted in evidence as defendant's Exhibit 19 pursuant to stipulation set out in the Court's pretrial order. Thus, plaintiffs have admitted the publication date which antedates the date of invention established by their evidence.

■■ The anticipatory nature of the May, 1952 publication lies in the fact that it sets out the advantage of impregnating the chaff, beeswing and pith fractions of a ground corn cob with molasses rather than to simply impregnate a ground whole corn cob with molasses. Even though this publication gives a different reason for removal of the woody ring portion of the cob, the failure to mention the absorbency reason does not destroy its invalidating effect. Thus, the simple facts of combining a food supplement with ground corn cobs from which the woody portion had been removed because it lacked value as a nutrient and vitamin carrier appeared in a publication in this country before the "invention" by plaintiffs. When measured as prior art not cited by the Patent Office against a "dissipated" presumption of validity, it serves to carry defendant's burden of showing the invalidity of Claim 4. Title 35, United States Code, Section 102. The failure of the May, 1952 article to realize the potential of such a combination does not affect its anticipatory effect. Bingham Pump Co., Inc. v. Edwards, 118 F.2d 338 (9th Cir.), cert. denied, 314 U.S. 656, 62 S.Ct. 107, 86 L.Ed. 525 (1941).

■ Claim 7 of the Karr patent is similarly invalid under Section 102. That claim sets out the method of producing

the "invented" feed by drying the lighter fractions of the cob before admixture with the molasses and again drying after admixture to remove as much moisture as possible. United States Patent No. 707,113 (August 19, 1902) [Hughes], United States Patent No. 1,015,838 (January 30, 1912) [Roberti], and United States Patent No. 1,360,174 (November 23, 1920) [Brown] are anticipatory of Claim 7. All three patents contain descriptions for the use of nonwoody portions of vegetable matter as carriers for molasses in animal feeds. In addition, the patents contain descriptions for both pre- and post-admixture drying to remove moisture for purposes of producing a dry, manageable cattle feed. While these patents touch also on the obviousness requirements of a patentable invention, their impact is sufficient to demonstrate the lack of novelty of plaintiffs' "invented" method of producing a dry, free flowing cattle feed which is a combination of a vegetable carrier and molasses. Stated otherwise, these patents are invalidating as anticipatory.

■■ In order to be validly patented, an invention must meet the tests of novelty, nonobviousness and utility. United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966); Ludwig Drum Co. v. Solar Musical Instrument Co., 376 F.2d 827 (6th Cir. 1967). The discussion immediately preceding shows that the Karr patent is invalid for lack of novelty. Defendant has also attacked the validity of the patent on the ground that it was "obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Title 35, United States Code, Section 103. In other words, an "invention," such as plaintiffs', may not be patented if it is the result of mechanical skill rather than inventive genius.

■ The state of the art prior to the date of the Karr "invention" was that it was known that:

a) Corn cob particles are absorbent;

b) Ground cobs are an excellent feed base for impregnation with blackstrap molasses;

c) It is advantageous to use ground whole cobs minus the woody ring portion as the feed base because of the vitamin content of such a base;

d) The woody ring portion of a ground cob makes a relatively small contribution to the quality of a feed;

e) With other plant-type carriers for molasses in stock feed, a more palatable and better feed is possible when the woody portion of such carriers is removed before admixture with blackstrap molasses; and

f) Such other carriers should be dried both before and after admixture in order to obtain a relatively dry, more palatable, manageable and free flowing stock feed.

It is readily apparent that even if the prior art is not sufficient to negate the requisite novelty of plaintiffs' "invention," it is sufficient to void it of nonobviousness. The nexus between plaintiffs' invention and the prior art is such as to be evident to a "skilled mechanic." While plaintiffs' "invention" may be an improvement on the prior art, it is an improvement which did not require any sort of "inventive genius." Even if novel, it is obvious. Stated otherwise, even if the prior art does not anticipate plaintiffs' "invention," it is so close to a full disclosure of such "invention" that it made the "invention" obvious. In the absence of the prerequisite of nonobviousness, the patent is statutorily invalid. Title 35, United States Code, Section 103; Monroe Auto Equipment Co. v. Heckethorn Mfg. & Sup. Co., 332 F.2d 406 (6th Cir.), cert. denied, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964).

■ While the above determination of invalidity of the Karr patent is dispositive of the case, a Court may properly answer both the question of validity and the question of infringement if both issues are before it. After due consider-

ation, the Court has determined that it can and should resolve both problems. Cover v. Schwartz, 133 F.2d 541 (2d Cir. 1942), cert. denied, 319 U.S. 748, 63 S.Ct. 1158, 87 L.Ed. 1703 (1943).

The claims, allegedly infringed by defendant's products, call for livestock feed:

a) Comprising the outer glume, beeswing and pith components only of a ground corn, and molasses; and

b) Comprising finely divided corn cobs substantially completely free from the woody ring constituents and molasses.

The undisputed evidence of this case reveals that a whole corn cob is made up of four relevant parts—beeswing, outer glume, pith and woody ring.

The products of defendant which are alleged to infringe are made in the following manner:

During the production of poultry litter and Nestco (a polishing material) the lighter particles (excluding woody ring) of ground corn cobs are blown off in an aspirator. While this process serves to generally separate the lighter particles from the woody ring portion, the aspirated particles contain about thirty per cent woody ring. The aspirated particles are then mixed with ground whole corn cobs in a common bin. This combination is then mixed with molasses. The resultant mixture is further processed or sold directly as feed.

Even though a statement was made in a deposition of Raymond Poppe, a superintendent for defendant, that some of the dairy feed pellet was made without any woody ring in the mix, this statement was later clarified to show that all of defendant's feeds have some portion of woody ring. Poppe's subsequent testimony, the testimony of other employees of defendant and the exhibits in the case show that the lighter particles from Nestco production contain an average of thirty per cent woody ring. Thus, it can be accurately stated that all of defendant's products contain a portion of woody ring.

The infringement controversy in this case has centered around the determination of the meaning of the phrases "comprising * * * only" and "comprising * * * substantially completely free" as they appear in the claims of the Karr patent. The word "comprising" is normally interpreted in patent law to be a word of enlargement and not of restriction. Parmelee Pharmaceutical Co. v. Zink, 285 F.2d 465 (8th Cir. 1961). Therefore, standing alone, "comprising" does not exclude the presence of other components in the mix. However, when "comprising" is combined with the word "only" or "substantially and completely free," the obvious conclusion is that it serves to restrict the inclusion of parts of the ground cob to the pith, beeswing and outer glume. The repeated amendment of plaintiffs' claims, the remarks appended thereto and the repeated references in the patent as to the worthlessness of the woody ring, clearly show that plaintiffs were attempting to exclude the woody ring portion of the cob from their molasses carrier.

The evidence in this case shows that all of defendant's feeds contain some woody ring in the cob portion. Even absent the mixture of the aspirated particles with ground whole cobs, some woody ring remains in the aspirated particles. Such a carrier would not be within the claims of the Karr patent inasmuch as it neither comprises "outer glume, beeswing and pith components only of a ground corn cob" nor "an absorptive nutritive meal substantially completely free from woody ring constituents." This conclusion is even more compelling when the particles aspirated from the Nestco and cob litter processes are mixed with ground whole cobs before impregnation with molasses.

In order to give the claims any other construction plaintiffs would be contending for a narrow construction in order to avoid prior art and a broad construction to prove infringement. Such an argument is unacceptable. Fife Mgr. Co. v. Stanford Engineering Co., 299 F.2d 223 (7th Cir.). This Court cannot

agree that the presence of woody ring in any percentage less than what was originally present falls within the claims of the patent. The patent would be rendered too ambiguous for interpretation. No one could predict at what point on a sliding scale of percentages of woody ring a product would infringe. Remixing an aspirated fraction with whole cobs is merely another form of taking a full weight of ground whole cobs and removing only part of the woody ring. Stated otherwise, plaintiffs' argument would require a finding of infringement if only one per cent of the woody ring were removed from ground whole cobs and molasses in an amount in excess of .4 per cent of the original weight were added to the meal remaining after such a removal. Clearly, the patent does not call for such a conclusion.

WHEREUPON, the Court determines:

a) Plaintiffs' patent is invalid over the prior art;

b) Plaintiffs' patent is invalid inasmuch as their mix and method are not inventions (in the legal sense of that word); and

c) Even if the patent were assumed to be valid, defendant has not infringed it.

Accordingly, plaintiffs' requested relief is denied.

The Court reserves jurisdiction to determine the request for the award of attorneys' fees. A hearing on such request will be set within sixty (60) days after the expiration of the time for appeal or after all appellate action has terminated and the manadate is filed in this court.

### ORDER

This matter is before the Court on plaintiff's motion to amend judgment (order and opinion) filed in this action on May 2, 1968.

The motion was filed on May 13, 1968. The Court through mistake held by its order of July 2, 1969 that the motion was not timely filed under the provisions of Rules 59(e) and 6(b) of the Federal Rules of Civil Procedure. On October 28, 1969, the parties entered into a stipulation that plaintiff's motion was timely filed; that the Court's order of July 2, 1969 may be vacated, and that the motion may be reconsidered by the Court.

The Court holds that its order of July 2, 1969 should be, and hereby is, vacated. Rule 60(b), Fed.R.Civ.P. The Court will *now* reconsider plaintiff's motion to amend judgment.

Plaintiff moves the Court to amend its finding that "plaintiffs have admitted the publication date" of May, 1952. Plaintiffs contend that the stipulation [1] it entered into with defendant was:

that imprinted publication dates should be accepted as *actual publication dates* but [that it] did not cover an agreement that *any date imprinted* on a publication was to be presumed to be a *publication date*. [Plaintiff's Motion to Amend Judgment, May 13, 1968.]

Plaintiff offered no evidence at trial that the imprinted date was other than the publication date. The United States Department of Agriculture article was admitted into evidence as an exhibit referred to as the May, 1952 publication. The Court's finding that the plaintiff admitted that United States Department of Agriculture article's publication date was May, 1952 is fully supported by the record.

Whereupon, the Court holds that the motion is without merit and therefore it is denied.

---

1. That uncertified copies of publications * * * may be accepted in the above entitled case * * * and the dates of issue and publication of said publications appearing thereon will be accepted as correct, subject to correction if errors occur. * * *

3. The above two paragraphs relate to all exhibits now of record in the case introduced by either party.

4. The above stipulation shall be extended to all papers of like character subsequently introduced in the case, subject to the usual objections for relevancy, immateriality and competency.