**Donald G. LYON, Plaintiff,**

v.

**The BOEING COMPANY, Defendant.**

**Civ. A. No. 119–73C2.**

United States District Court, W. D. Washington.

Dec. 4, 1975.

Laurence A. Mosler, Mosler & Mosler, Seattle, Wash., James C. Wray, Arlington, Va., for plaintiff.

Keith Gerrard, John D. Dillow, Perkins, Coie, Stone, Olsen & Williams, Seattle, Wash., for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MORELL E. SHARP, District Judge.

This is a patent infringement action alleging that defendant is infringing certain claims of plaintiff's patents 3,127,130 and 3,076,623, hereinafter '130 and '623. In 1963 and 1964, plaintiff was issued patents for inventions of a variable shaped airfoil, patent '623, and a wing and flap system, patent '130 (see exhibits G and F, respectively). Plaintiff alleges that defendant's leading edge flap on the Boeing 747 (see

exhibit E) infringes plaintiff's claims 1, 2, 3 and 6 of patent '623, and that defendant's wing and flap system on the Boeing 747 (see exhibit E) infringes plaintiff's claim 10 of patent '130. Defendant now moves for summary judgment, claiming noninfringement and invalidity of plaintiff's patent claims.

### Infringement of Patents '130 and '623 Claims

"Noninfringement as a matter of law may be decided upon a motion for summary judgment when there is no genuine issue of material fact, and when it is possible to understand without extrinsic expert evidence the nature of the patented invention, and to determine that the alleged infringing device does not contain all the elements set forth in the patent claim . . . ." *Graphicana Corp. v. Baia Corp.*, 472 F.2d 1202 (6th Cir. 1973); *Engelhard Industries Inc. v. Research Instrumental Corp.*, 324 F.2d 347 (9th Cir. 1963). In order to constitute infringement, there must exist a substantial identity of means, function and result. *Pursche v. Atlas Scraper and Engineering Co.*, 300 F.2d 467 (9th Cir. 1962). In the instant case, there is no substantial identity of means, function or result between either the Boeing wing and flap system and plaintiff's claim 10 of patent '130, or the Boeing leading edge flap and plaintiff's claims 1, 2, 3 and 6 of patent '623.

### Patent '130

By mere observation it is obvious that the means employed by Boeing is not equivalent to that used by plaintiff in the '130 patent claim. In '130, the two flaps are stowed in and deployed from intermediate positions along the bottom of the wing (see exhibit F). The flaps of the Boeing system, however, are stored much differently, i. e. the front flap is stored in the front of the wing and the rear flap is actually the trailing edge of the wing, which is merely dropped rearward when deployed (see exhibit E).

Second, it is clear that the two systems have different functions. The function of the '130 flaps when deployed is to direct air along the underside of the wing and against the rear flap in a more efficient manner (see exhibit F). The Boeing system, however, functions to divide the airstream at the leading edge flap, directing one flow over the wing's upper surface, and the other along the lower surface of the leading edge flap in such a way that a portion of the latter airstream passes through a gap between the leading edge flap and the main wing and then over the top of the wing, while the remaining air which was directed under the leading edge flap continues along the underside of the main wing (see figure 12 at page 31 of defendant's noninfringement brief).

Finally, the results achieved by the Boeing system are not equivalent to those of plaintiff's '130 system. In the '130 claim, plaintiff stated that conventional flapped wings had "the inherent quality of increasing the moment of pitch of the wing. In other words, it tends to cause the nose of the aircraft to pitch downwardly and this is ordinarily overcome by elevator controls." (see exhibit B, patent '130, column 1, lines 25–29.) The main object of plaintiff's invention was "to provide a new type of flap which will not change the pitching characteristics or moment of pitch of an aircraft when in operation." (see exhibit B, patent '130, column 1, lines 29–32.) Defendant argues, however, that the Boeing flap system has little effect on the moment of pitch caused by deployment of the trailing edge flap (see Dorn affidavit at page 5). Instead, the Boeing system is intended to increase the area of the wing by 28%, to direct an airstream over the upper surface of the wing near its leading edge to prevent stall during low speed flight at a high angle of attack and generally to increase the lift of the wing by 90% (see Dorn affidavit at page 8).

Other than flatly stating that the means, function and result of the two systems are equivalent and that a genuine issue of material fact exists as to the similarity of the two systems, plaintiff does not attempt to dispute the differences which defendant

points out by affidavit and exhibits. A mere statement that an "issue exists" does not prevent the granting of summary judgment. *Henderson v. A. C. Spark Plug Division of GMC,* 366 F.2d 389 (9th Cir. 1966). Based on observation and study, the Court finds that the Boeing flap and wing system does not infringe upon claim 10 of plaintiff's patent '130.

### Patent '623

As with patent '130, it is possible with '623 to determine by observation if Boeing's leading edge flap is substantially equivalent to plaintiff's device (the variable shaped airfoil, exhibit G). First, the means employed in Boeing's leading edge flap is not equivalent to that employed in plaintiff's patent '623. A comparison of the devices confirms that position. The Boeing leading edge flap is concavely open on the lower side, has no rib structure extending around the interior perimeter of the flexible flap, is stored compactly when not deployed, has different connecting means, and has a non-resilient nosepiece as part of its surface. Plaintiff's patent '623, on the other hand, is a fully enclosed airfoil, is never stored away in any position, has a pin and slot connecting mechanism rather than a series of hinged links and arms, has an interior rib structure as part of its flexible quality, and has no non-resilient members on any part of its surface.

Second, it is apparent that the function of the two devices is also different. The Boeing leading edge flap is not used during cruise, but is only deployed during take-off and landing as a member of the flap system. While deployed it has only one operating position. The flexibility feature is employed only as a means of storing the flap when not in use. Patent '623, however, was designed and intended to be used as an aircraft wing, possessing the attribute of flexibility so as to allow the wing to assume a variety of shapes to compensate for various flight conditions.

Finally, the results of the two devices are dissimilar. The result of '623 is to change the shape of an aircraft wing while in flight, and thereby provide improved maneuverability and flying characteristics (see exhibit C, patent '623, column 1, lines 38–42), i. e. compensate for flight loads by altering shape of wing, shake off ice or snow by flexing wings, prevent stalling on turns by varying the shape of one wing to compensate for the reduced speed of the other. The Boeing flexible leading edge flap, however, is used only on take-off and landing as a means to increase lift and prevent stall at low speeds. Once the plane is in flight, the device is stored away and cannot be used to increase maneuverability under other varying flight conditions. Again, from observation and study, the Court finds that the Boeing flexible leading edge flap does not infringe upon claims 1, 2, 3 and 6 of plaintiff's patent '623.

### Validity of Patents '130 and '623

As with infringement, summary judgment is proper in determining claims of patent invalidity when there is no genuine issue as to any material fact. *Proler Steel Corp., Inc. v. Luria Bros. & Co., Inc.,* 417 F.2d 272 (9th Cir. 1969). 35 U.S.C. § 282 establishes:

> "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

A patent may be invalidated by showing that it was fully anticipated by prior art (see 35 U.S.C. § 102), or that at the time the invention was made it was obvious to a person having ordinary skill in the art to which the invention belongs (see 35 U.S.C. § 103). Defendant here argues that all of plaintiff's patent claims in issue were fully anticipated by prior art and that they were obvious to a person having ordinary skill in the art of aerodynamics and wing structures. There appears to be no genuine issue of material fact in this case that claim 10 of '130 and claims 1, 2, 3 and 6 of '623 were anticipated by prior art and were obvious at the time of their invention by plaintiff.

## Patent '130

Defendant contends that the patent '130 claim was fully anticipated by the Lemoigne patent, issued by the French government in 1948 (see exhibit L), and that the device was obvious at the time of its invention. The Court agrees. A comparison of the Lemoigne device with plaintiff's wing and flap system shows a substantial equivalence. The Lemoigne device was intended to alleviate the same problem in the same manner as plaintiff's device, i. e. allow an airstream to pass through a gap between the wing and the front flap so as to act upon the rear flap, thereby preventing the nose of the aircraft from diving downward when the rear flaps were deployed. The only major difference which is apparent between the Lemoigne and plaintiff's wing and flap system is that in the Lemoigne system the rear flap constitutes the trailing edge of the wing. (Likewise, in the Boeing wing and flap system, the rear flap is the trailing edge of the wing. If the Lemoigne patent is not anticipatory of plaintiff's patent '130 because of the different positioning of the rear flap, then it cannot be said that the Boeing wing and flap system is an infringement on plaintiff's patent.) It is not disputed that the patent examiner did not consider the Lemoigne patent in plaintiff's application for patent '130. When the file wrapper of a patent application does not contain reference to earlier pertinent art, the presumption then is that the prior art was not considered by the patent office. *Henderson v. A. C. Spark Plug Division of GMC, supra.* Further, as a matter of law, the statutory presumption of claim validity is dissipated by showing pertinent prior art which was not examined or brought to the attention of the patent office. *Deere & Co. v. Sperry Rand Corp.,* 513 F.2d 1131 (9th Cir. 1975). Finally, an American patent is anticipated by a prior foreign patent if the latter exhibits the invention in such exact terms as to enable any person skilled in the art to practice it without the necessity of making further experiments. *Pursche v. Atlas Scraper and Engineering Co., supra.* A study of the designs of the Lemoigne patent evinces its clarity in that regard and

supports the conclusion that it anticipated claim 10 of plaintiff's patent '130. In addition, it is clear plaintiff's patent claim fails because plaintiff's device was obvious at the time of the intervention to a person with ordinary skill in the art of aerodynamics and wing design (see Zaparka and Lemoigne patents, exhibits K and L, respectively, and exhibits I and J).

## Patent '623

Defendant also argues that claims 1, 2, 3 and 6 of patent '623 fail because of anticipation and obviousness. Defendant contends that because of the prior art demonstrated in the Parker, Patterson, Kientz and Parmele devices (see exhibits U, V, W and X), plaintiff's '623 patent claims are invalidated. It is undisputed that the patent examiner did not consider those devices in plaintiff's application for patent '623. After examination of the exhibits concerning those devices, the Court concludes that they were anticipatory of plaintiff's patent '623. In light of plaintiff's argument that his claims should stand because his device is a "combination," he must be able to demonstrate that his invention produces "new or surprising results." *Hewlett-Packard Co. v. Tel-Design, Inc.,* 460 F.2d 625 (9th Cir. 1972). The result of plaintiff's claims for '623, however, is the powered expansion and contraction of the wing, a result which was clearly anticipated before plaintiff's patent application by the Parker, Kientz, Patterson and Parmele devices, and which was obvious at the time plaintiff conceived of his device.

In conclusion, upon examination of plaintiff's patent claims, the accused infringing devices of defendant, and the affidavits and exhibits submitted by both parties, it is obvious that defendant's devices do not infringe upon claim 10 of plaintiff's patent '130 or claims 1, 2, 3 and 6 of plaintiff's patent '623. Further, the conclusion is also apparent that claim 10 of '130 and claims 1, 2, 3 and 6 of '623 are invalid due to anticipation and obviousness. The defendant's motion for summary judgment is therefore GRANTED.

IT IS SO ORDERED.