**LUDWIG DRUM CO., Plaintiff-Appellant,**

v.

**SOLAR MUSICAL INSTRUMENT COMPANY, Defendant-Appellee.**

No. 17010.

United States Court of Appeals
Sixth Circuit.

May 4, 1967.

Benjamin H. Sherman and Lewis T. Steadman, Chicago, Ill. (Truman A. Herron, Wood, Herron & Evans, Cincinnati, Ohio, Lewis T. Steadman, John H. Sherman, Hill, Sherman, Meroni, Gross & Simpson, Chicago, Ill. on the brief), for appellant.

John Rex Allen, Chicago, Ill. (Charles L. Rowe, Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., Stanley H. Foster, Youngblut, Melville, Strasser & Foster, Cincinnati, Ohio, on the brief), for appellee.

Before PHILLIPS, EDWARDS and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

Plaintiff-Appellant Ludwig appeals from a judgment of the United States District Court for the Middle District of Tennessee, holding his patent to be invalid.

The patent had been issued by the United States Patent office on Ludwig's claim of invention of a new (and commercially useful) way of securing a drumhead. His suit had been filed under 28 U.S.C. §§ 1338 and 1400 claiming infringement of his patent by defendant-appellee. Thereupon appellee responded by asserting invalidity of Ludwig's patent because of prior art and lack of invention.

Drumheads since the dawn of history had until recently been made of animal skins. In modern times such skins had been attached to the drumhead mounting ring by adhesives.

In quite recent years a plastic drumhead of very satisfactory resonance called Mylar was developed. This plastic had the great advantage of being weatherproof—as compared to leather which was adversely affected by rain. It also had the disadvantage of such a slick surface that adhesives would not attach it successfully to the mounting ring.

The response made to this problem in the industry was to seek to fix the Mylar to the mounting ring by a channel and spline method. This basic method of holding materials had been in common use for centuries for a variety of materials and uses.

At least two patents (the Coffin and the Watkins patents) were granted in the last century for holding flexible materials by the channel and spline method.

In the 20th century a number of drum applications were made employing the channel and spline method. The Bryant patent in 1911 and the Elkins patent in 1914 and the Erwin patent in 1955 all

employed this fundamental concept. The last two also employed pressure from the counterhoop (the device generally used to tighten the drumhead) to tighten the spline against the drumhead material.

The closest device in the prior art, however, to that of the Ludwig patent was a drum manufactured and sold in 1957 and 1958 by Camco on which no patent was issued (perhaps because of the death of Camco's attorney while an application was pending).

The Camco method employed a round spline which was forced into a channel mounting ring. The sides of the mounting ring were then clamped together on the Mylar and the spline. The counterhoop operated on the clamped-in outer edge of the Camco channel (or so the District Judge found from substantial evidence).

Against this prior art, appellant's method employed a square channel and square spline (basically similar to devices in prior art). Ludwig's patent extended the outer leg of the channel, however, and then after the retaining ring was pressed into place on the Mylar, it taught the bending of the outer leg of the channel at a 90° angle on top of the retaining ring so as to hold the Mylar firmly in place. (See Appendix A for drawings).

Appellant claims novelty, too, in the fact that no adhesive was employed in his application. The counterhoop is employed so as to tighten the drumhead. It presses down upon the bent over top portion of the channel thereby making the Mylar more secure at the maximum employment of force upon it. This last claim (as to counterhoop pressure) we believe is rebutted as to novelty by this record. But the added security (without adhesive) gained by a 90° bend of the outside leg of the channel is not.

Ludwig claims—and we believe that this record supports him—that this relatively simple added step made the channel and retaining ring method of affixing Mylar drumheads considerably more effective. It brought his drums added

commercial success. Ludwig claims that as a result appellee illegally started to copy his patented method.

Our sole question on this appeal is whether the added step referred to above taught in the Ludwig patent was a patentable invention or whether it represented a mechanical development which would have been obvious to a mechanic skilled in the art. In a succinct and well-reasoned memorandum opinion, 345 F. Supp. 793, the District Judge, on this crucial point, found as follows:

"The Court finds and concludes that Mr. Ludwig ' * * * added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly. * * * ' Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp. (1950), 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, 167. For such a congregation to rise to the status of invention, a combination of old elements must ' * * * co-act to produce the result achieved, the result must be new and useful, and the method of operation must be new. * * * ' Cold Metal Process Co. v. Republic Steel Corp., C.A.6th (1956), 233 F.2d 828, 838, certiorari denied, (1956), 352 U.S. 891, 77 S.Ct. 128, 1 L.Ed.2d 86.

"Mr. Ludwig's ultimate assembly, in the Court's opinion, is nothing more than a combination of several well-known techniques. When use of a square spline (cf. Coffin, fig. 5 or Watkins, fig. 2) is utilized to anchor pliable sheet material in a square channel (cf. Bryant, figs. 2 and 5 or Norquist, figs. 2, 8 and 10–12), wherein the outer rim is folded over the spline, whether partially or completely, and wherein application of tension by means of the counter-hoop transmits further locking pressure on the spline (cf. Erwin, fig. 2 and Camco), then the Ludwig application is duplicated completely, or so nearly so that such assembly of known apparatus is well within the scope of mechanical skill of

a person skilled in the art." (Footnote omitted.)

We believe the District Judge was correct in his findings except in one respect.

■ In our view Ludwig's method of securing the Mylar drumhead had a novel feature in the 90° bend of the outside leg of the channel. This feature also had genuine utility and commercial success. Unfortunately for Ludwig, we, like the trial judge, find this feature lacking in what in modern times has come to be called "nonobviousness." It is clear that all three tests of patentability (novelty, utility and nonobviousness) must be met by a valid patent. United States v. Adams, 383 U.S. 39, 48, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). The clumsy word "nonobviousness" has been brought into patent law by statute:

"§ 103.  *Conditions for patentability; non-obvious subject matter*

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made." 35 U.S.C. § 103 (1964).

The statute was probably adopted to implement or "clarify" Supreme Court opinions which had sought to define invention as opposed to mechanical skill. It is, however, to be doubted that § 103 effected any real change in patent law. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965).

In 1850 in Hotchkiss v. Greenwood, 52 U.S. (11 Howard) 248, 13 L.Ed. 683 (1850), the Supreme Court refused validity to a patent for a porcelain door knob. It said in that case:

"[U]nless more ingenuity and skill in applying the old method of fastening the shank and the knob were required in the application of it to the clay or porcelain knob than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which *constitute essential elements of every invention.* In other words, the improvement is the work of the skillful mechanic, not that of the inventor." Hotchkiss v. Greenwood, supra at 267.

In 1964 the United States Supreme Court said:

"But in rewarding useful invention, the 'rights and welfare of the community must be fairly dealt with and effectually guarded.' Kendall v. Winsor, 21 How. 322, 329 [16 L.Ed. 165] (1859). To that end the prerequisites to obtaining a patent are strictly observed * * *. To begin with, a genuine 'invention' or 'discovery' must be demonstrated 'lest in the constant demand for new appliances the heavy hand of tribute be laid on each slight technological advance in an art.' Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 92 [62 S.Ct. 37, 41, 86 L.Ed. 58] (1941); see Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–153 [71 S.Ct. 127, 95 L.Ed. 162] (1950); Atlantic Works v. Brady, 107 U.S. 192, 199–200, 2 S.Ct. 225, 27 L.Ed. 438 (1883)." Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 230, 84 S.Ct. 784, 788, 11 L.Ed.2d 661 (1964).

■ We believe (no matter how useful it may be) that the Ludwig method of bending over the outer leg of the channel to secure the retaining ring and Mylar was a simple and "obvious" step. It represented a "slight technological advance in an art." We think it lacks the "nonobviousness" of invention. It is for invention that the Constitution has reserved the right of patent monopoly. U.S.Const. art. I, § 8, cl. 8.

Affirmed.

APPENDIX A

CHART ILLUSTRATING
WHEREIN THE ELEMENTS OF CLAIM 12 OF
LUDWIG PATENT NO. 2,979,981 ARE FOUND
IN DEFENDANTS' STRUCTURE

A DRUMHEAD CONSTRUCTION COMPRISING A FIRST RING OF GENERALLY CHANNEL-SHAPED CROSS-SECTIONAL CONFIGURATION DEFINING A MOUNTING SLOT HAVING A FULL LENGTH ACCESS OPENING THROUGH SAID RING ALONG A SIDE THEREOF THAT FACES IN A DIRECTION GENERALLY NORMAL TO THE PLANE OF THE RING,

SAID RING HAVING AN OUTER SIDE WALL OF GREATER HEIGHT THAN ITS INNER SIDE WALL,

A PLASTIC DRUMHEAD SHEET HAVING A GENERALLY CIRCULAR HORIZONTAL CENTRAL CROWN PORTION AND HAVING A MARGINAL EDGE,

SAID SHEET SPANNING SAID RING WITH SAID MARGINAL EDGE EXTENDING THROUGH SAID ACCESS OPENING AND LINING SAID SLOT TO SUBSTANTIALLY FOLLOW THE OUTLINE CONFIGURATION THEREOF, AND

A SECOND RING COMPLEMENTAL TO AND NESTED IN FORCE FIT RELATION IN SAID SLOT OF SAID FIRST RING TO ESTABLISH SAID RINGS IN TIGHT FIT COMPRESSIONAL ENGAGEMENT FOR EXERTING CLAMPING PRESSURE AGAINST THE SAID MARGINAL EDGE THAT LINES SAID SLOT TO GRIP THE SAME AGAINST SLIPPAGE EVEN WHEN SAID DRUMHEAD SHEET IS SUBJECTED TO HIGH TENSION SHOCK LOADS,

SAID OUTER SIDE WALL OF SAID FIRST RING HAVING ITS FREE EDGE PORTION PROJECTING RADIALLY INWARDLY RELATIVE TO OVERLIE SAID SECOND RING AND PROVIDES A POSITIVE MECHANICAL INTERLOCK HOLDING THE RINGS IN SAID TIGHT FIT COMPRESSIONAL ENGAGEMENT TO MAINTAIN SAID CLAMPING PRESSURE FOR GRIPPING SAID MARGINAL EDGE OF SAID SHEET,

WITH THE SAID RADIALLY PROJECTING FREE EDGE PORTION PRESENTING AN EXTERIOR SURFACE PROVIDING AN UPWARDLY FACING MOUNTING SEAT ADAPTED FOR ENGAGEMENT WITH A COUNTER HOOP TO RECEIVE AND RESPOND TO DRUM TUNING FORCES APPLIED THROUGH THE COUNTER HOOP FOR REINFORCING AND ENHANCING THE MECHANICAL INTERLOCK BETWEEN SAID RINGS.